■ RICHARD G. COHEN, Respondent, v LORD, DAY & LORD, Appellant.—Order and judgment (one paper), Supreme Court, New York County (Irma Vidal Santaella, J.), entered March 2, 1988, insofar as it denied defendant's motion for summary judgment and granted plaintiff's cross motion for summary judgment on the first cause of action and referred the issue of the amount due plaintiff on such cause to a Special Referee for hearing, unanimously reversed, on the law, and summary judgment granted to defendant dismissing the first cause of action, and plaintiff's cross motion denied, without costs.

Plaintiff Richard Cohen was a partner in defendant law firm, Lord, Day & Lord*, from April 1, 1966 until his voluntary withdrawal from the firm on December 31, 1985 to become a partner in another New York law firm, Winthrop, Stimson, Putnam and Roberts. Plaintiff was head of defendant firm's tax department from 1984 until his departure. New York is the only jurisdiction in which plaintiff is licensed to practice law.

---

* Since commencement of these proceedings the firm has merged with another law firm and its name has changed to Lord Day Lord & Barrett, Smith.

Following his departure from Lord, Day & Lord, Cohen was paid $105,759.97 by defendant, which represented his contribution to the firm's working capital. Plaintiff was also paid $46,641.90 by defendant, the balance due of his partnership share of the firm's earnings during the first quarter of its fiscal year ending December 31, 1985. Defendant, however, denied plaintiff's request for additional moneys pursuant to article TENTH (B) (a) (i) of the Lord, Day & Lord partnership agreement, executed by plaintiff on October 1, 1981. Article TENTH (B) (a) (i), which provides a formula for distributing uncollected earnings to partners upon their withdrawal from the firm, states as follows: "(i) If at the time of his withdrawal he shall have been a member of the Partnership for ten (10) years, there shall be paid, within forty-five (45) days following the close of each of the three twelve-month periods following his withdrawal * * * a share of the net profits for each such period determined by multiplying the total net profits of Partnership for each such period by one-third of the average of the percentages which his shares of the net profits as distributed to him for each of the three (3) fiscal years prior to his withdrawal bore to the total net profits of the Partnership in each of such three (3) prior years."

Defendant determined that plaintiff was not entitled to such payments under the provisions of article TENTH (B) (d), which states: "(d) Notwithstanding anything in this Article TENTH to the contrary, if a Partner withdraws from the Partnership and without the prior written consent of the Executive Committee continues to practice law in any state or other jurisdiction in which the Partnership maintains an office or any contiguous jurisdiction, either as a lawyer in private practice or as a counsel employed by a business firm, he shall have no further interest in and there shall be paid to him no proportion of the net profits of the Partnership collected thereafter, whether for services rendered before or after his withdrawal. There shall be paid to him only his withdrawable credit balance on the books of the Partnership at the date of his withdrawal, together with the amount of his capital account, and the Partnership shall have no further obligation to him."

By summons and complaint dated January 14, 1987, Cohen commenced a proceeding in Supreme Court, New York County, seeking, under his first cause of action, to recover approximately $285,000 in uncollected firm earnings on the theory that article TENTH (B) (d) constitutes an unlawful and unreasonable restriction upon his right to practice law, in conflict with DR 2-108 (A) of the New York Code of Profes-

sional Responsibility and is, therefore, void as against public policy.

DR 2-108 (A), entitled "Agreements Restricting the Practice of a Lawyer" states: "(A) A lawyer shall not be a party to or participate in a partnership or employment agreement with another lawyer that restricts the right of a lawyer to practice law after the termination of a relationship created by the agreement, except as a condition to payment of retirement benefits."

Plaintiff's second cause of action seeks reimbursement of pension fund contributions in the amount of $1,875.

In lieu of answering, Lord, Day & Lord moved pursuant to CPLR 3211 (a) (7) to dismiss the complaint for failure to state a cause of action. Plaintiff cross-moved for summary judgment and the parties, thereafter, stipulated that both motions were to be treated as motions for summary judgment.

By decision filed on March 2, 1988 the IAS court ruled that article TENTH (B) (d) was unenforceable because it was in violation of DR 2-108 (A). The court relied on a decision made by the Court of Appeals of Oregon in *Gray v Martin* (63 Ore App 173, 663 P2d 1285 [1983]) where a provision similar to article TENTH (B) (d) was held unenforceable because it violated Oregon Rules of Professional Responsibility DR 2-108 (A). The IAS court determined further that plaintiff was not entitled to recover pension fund contributions under his second cause of action since DR 2-108 (A) contained an exception for retirement benefits.

The instant appeal is from that portion of the order of the IAS court which granted summary judgment to the plaintiff and referred the issue of the amount of money owing to a Referee.

At the outset, we find that article TENTH (B) (d) is not a restrictive covenant. It does not prevent plaintiff from practicing law in New York or in any other jurisdiction in competition with defendant. Indeed, upon withdrawing from the defendant law firm, plaintiff promptly joined a competing firm, where he began to service several of the same clients with whom he worked during his tenure at Lord, Day & Lord, without defendant seeking any injunctive or monetary relief against him. Instead, article TENTH (B) (d) seeks to impose a financial disincentive upon withdrawing partners from competing with the firm by going into practice in jurisdictions in which the firm practices.

Article TENTH (B) (a) (i) of the Lord, Day & Lord partnership

agreement at issue defines the economic rights and obligations of voluntarily withdrawing partners. The formula attempts to compensate the departing partner for profits earned but not received while a partner, and avoids the necessity for a complete accounting with each entering and exiting partner. Article TENTH (B) (d) prevents departing partners who are likely to cause potential economic injury to the firm from either reaping the above-mentioned windfalls or from eating into what could be shrinking profits due to loss of business.

The pivotal issue raised by this appeal is whether a law firm's partnership agreement which provides an economic disincentive to partners voluntarily leaving the firm to practice law in jurisdictions in or contiguous to one(s) in which the firm offices are located, "restricts the right of a lawyer to practice law" within the meaning of DR 2-108 (A).

Citing *Gray v Martin* (63 Ore App 173, 663 P2d 1285, *supra),* plaintiff contends that while not preventing him from practicing in New York, the provision does "restrict" him, within the meaning of DR 2-108 (A), by making such a choice costly. He further argues that the term "restrict" embraces a financial disincentive because the Disciplinary Rule contains the related, but more limited, exception allowing a promise of noncompetition to be a condition for payment of retirement benefits.

We find no support for plaintiff's contention that DR 2-108 (A) was intended to safeguard attorneys' rights to departure compensation. On the contrary, the principle underlying DR 2-108 (A) is the protection of the right of members of the public to select and repose confidence in lawyers of their choice without restriction by providing full availability of legal counsel. *(See, Matter of Silverberg [Schwartz],* 75 AD2d 817 [2d Dept 1980], *appeal dismissed* 53 NY2d 704; *Dwyer v Jung,* 133 NJ Super 343, 336 A2d 498 [1975], *affd* 137 NJ Super 135, 348 A2d 208 [1975]; Model Code of Professional Responsibility EC 2-1, 2-26, 2-31.) The intent of DR 2-108 (A) is that clients have the widest possible choice of attorneys. *(See, Dwyer v Jung, supra,* at 346-347, 500, citing NY County Lawyers' Assn Comm on Professional Ethics response to Question No. 621 [73-9].) Consequently, provisions of partnership agreements which prohibit a partner's representation of the firm's clients upon withdrawal or totally prohibit the practice of law within a geographical area have been invalidated as contrary to public policy. *(See, Matter of Silverberg [Schwartz], supra; cf., Dwyer v Jung, supra; see also,* ABA Comm on Ethics

and Professional Responsibility Inf Opn 1417.) Concur—Sandler, J. P., Carro, Asch, Kassal and Smith, JJ.