Donald H. SPIEGEL, Plaintiff–
Appellant,

v.

THOMAS, MANN & SMITH, P.C.,
Defendant–Appellee.

Supreme Court of Tennessee
at Chattanooga.

April 15, 1991.

Rehearing Denied June 10, 1991.

James C. Lee, Chattanooga, for appellant.

Thomas O. Helton, Chattanooga, for appellee.

## OPINION

DAUGHTREY, Justice.

This case concerns the validity of a provision in an agreement entered into by the stockholders of Thomas, Mann & Gossett, a professional corporation operating as a law firm in Chattanooga. The firm was later known as Thomas, Mann & Smith and has now completely disbanded. The agreement provided for the payment of deferred compensation, consisting of income accrued but not yet distributed, plus other amounts, to compensate for what would traditionally be considered equity in the firm. The agreement provided that this deferred compensation was payable to shareholders leaving the employ of the corporation unless the withdrawing employee continued in the practice of law. This exception for withdrawing stockholders who opted to continue to practice law is the provision at issue in this case.

The law firm of Thomas, Mann & Gossett, formed in 1978, was incorporated in 1981. The original stockholders, including the plaintiff, signed a series of documents formalizing their agreement, including an "employment and deferred compensation agreement." That agreement set out a yearly salary and benefits for each employee and provided in paragraph 6 for the "death, withdrawal or retirement of Employee."

Upon death or retirement, an employee was to be paid deferred compensation based upon a formula contained in the agreement. Similarly, an employee who withdrew from the firm but did not practice law, or who worked in the firm in a different capacity, could receive deferred compensation. Under paragraph 6(f), however, "[a]n Employee withdrawing and continuing the practise of law [was not] entitled to deferred compensation."

Plaintiff Spiegel continued to work for the firm for some five years after the deferred compensation agreement went into effect. After Richard B. Gossett withdrew from the firm in September 1986, Spiegel decided to withdraw as well. Because Gossett immediately went to work with another law firm in direct competition with his previous firm, he chose not to request the deferred compensation referred to in the agreement. Spiegel, on the other hand, was employed by the Franklin L. Haney Company as in-house counsel. In that position, as a salaried employee, he requested payment of the deferred compensation and, when it was denied, filed suit.

In his complaint, Spiegel contended that, pursuant to the terms of his employment agreement, he is entitled to deferred compensation because he is not involved in the practice of law. Additionally, he asserted that because the firm had completely dissolved, he was equitably entitled to the deferred compensation. Spiegel amended his complaint to assert that the deferred compensation portion of the employment agreement was a "thinly-disguised non-competition agreement." He contended that as such, it was unenforceable.

The case was tried and judgment was entered for the defendants, Thomas, Mann & Smith. In his memorandum opinion, the chancellor reviewed the evidence and expressed his conclusion that while in the employ of Franklin L. Haney Company, Spiegel was indeed practicing law. The chancellor also considered the validity of the agreement in the light of Disciplinary Rule 2–108(A) of Rule 8 of the Rules of the Tennessee Supreme Court. This rule of professional conduct provides that a lawyer should not be "a party to a[n] agreement ... that restricts the right of a lawyer to practice law after the termination of the relationship created by the agreement." The chancellor held that the agreement in this case does not restrict the right of a lawyer to practice law after leaving the firm, finding instead that "it merely provides that a withdrawing employee who continues to practice law will not receive deferred compensation...."

The plaintiff appealed, and the Court of Appeals affirmed the decision of the trial court, concurring in the chancellor's determination that after his withdrawal from Thomas, Mann & Smith, the plaintiff was engaged in the practice of law. Citing the intermediate New York appellate court's opinion in *Cohen v. Lord, Day & Lord,* 144 A.D.2d 277, 534 N.Y.S.2d 161 (N.Y.App. Div.1988), rev'd 75 N.Y.2d 95, 551 N.Y.S.2d 157, 550 N.E.2d 410 (Ct.App.1989), the court further held that the condition placed upon the payment of deferred compensation did not violate D.R. 2–108.[1]

Hence, we now have before us concurrent findings of fact by the two lower courts that when Donald Spiegel left Thomas, Mann & Smith and went to work as in-house counsel for the Franklin L. Haney Company, he continued to practice law within the meaning of paragraph 6(f) of the deferred compensation agreement. Under T.C.A. § 27–1–113, those findings of fact are binding on this court unless we conclude that there is no evidence to support them. It is unnecessary to address this factual issue, however, because we conclude as a matter of public policy that the disputed agreement is unenforceable.

■ The dispositive legal issue presented in this case is whether or not paragraph 6 of the agreement, which denies deferred compensation to "an Employee withdrawing and continuing the practise of law," is void as violative of the public policy of

1. At the time that the Tennessee Court of Appeals released its opinion in this case, relying heavily on the New York intermediate court's ruling, the New York Court of Appeals decision reversing that ruling had not been released.

Tennessee because it violates the principles embodied in D.R. 2–108. That rule provides:

**DR 2–108. Agreements Restricting the Practice of a Lawyer:** (A) A lawyer shall not be a party to or participate in a partnership or employment agreement with another lawyer that restricts the right of a lawyer to practice law after the termination of a relationship created by the agreement, except as a condition to payment of retirement benefits.

(B) In connection with the settlement of a controversy or suit, a lawyer shall not enter into an agreement that restricts his right to practice law.

█ Unless a private contract tends to harm the public good, public interest, or public welfare, or to conflict with the constitution, laws, or judicial decisions of Tennessee, it does not violate public policy. *Holt v. Holt,* 751 S.W.2d 426, 428 (Tenn. App.1988), citing *Home Beneficial Association v. White,* [16 Beeler] 180 Tenn. 585, 588–9, 177 S.W.2d 545, 546 (1944). The reverse is also true: A contract with a tendency to injure the public violates public policy. *Holt* at 428, citing *Nashville Ry. and Light Co. v. Lawson,* [17 Thompson] 144 Tenn. 78, 87, 229 S.W. 741, 743 (1921).

Concern for the public good is inherent in the purposes underlining DR 2–108, which incorporates the principles set forth in ABA Formal Opinions for Professional Ethics, No. 300 (1961). There, the Ethics Committee determined that:

It is unethical for an attorney employing another attorney to include as part of the employment contract a restrictive covenant prohibiting the employee from practicing law in the city and county for two years after the termination of employment.

The Committee stated that the practice of law is a profession, not a business, that clients are not merchandise, and that lawyers are not tradesmen. *Id.* Calling such a restrictive covenant an attempt to barter in clients, the Committee stated its opinion that it would be improper for an employing lawyer to require such a restrictive cove-

nant and likewise improper for an employed lawyer to agree to it. *Id.* DR 2–108 thus prohibits behavior, including bartering in clients by the use of restrictive covenants, which infringes on a lawyer's responsibility under Canon 2 of the Code of Professional Responsibility to "assist the legal profession in fulfilling its duty to make legal counsel available."

The defendant argues that the provisions of this agreement do nothing to infringe on the availability of counsel from which the public can choose. The firm insists that, although these provisions of the agreement prohibit a withdrawing shareholder who continues to practice law from receiving deferred compensation, the agreement does not restrict the right of a withdrawing shareholder to practice law.

This argument was posited and rejected in *Cohen v. Lord, Day & Lord,* 75 N.Y.2d 95, 551 N.Y.S.2d 157, 550 N.E.2d 410 (Ct. App.1989). There, the New York Court of Appeals stated:

We hold that while the provision in question does not expressly or completely prohibit a withdrawing partner from engaging in the practice of law, the significant monetary penalty it exacts, if the withdrawing partner practices competitively with the former firm, constitutes an impermissible restriction on the practice of law. The forfeiture-for-competition provision would functionally and realistically discourage and foreclose a withdrawing partner from serving clients who might wish to continue to be represented by the withdrawing lawyer and would thus interfere with the clients' choice of counsel.

*Id.* 551 N.Y.S.2d at 158, 550 N.E.2d at 411.

The defendant attempts unsuccessfully to distinguish *Cohen* from this case. The effort to do so brings to mind the statements of Chief Judge Cuthbert W. Pound of the New York Court of Appeals, who once said:

No two cases are exactly alike. A young attorney found two opinions ... where the facts seemed identical although the law was in conflict, but an older and more experienced attorney pointed out to

him that the names of the parties were different.

Leflar, *Appellate Judicial Opinions* 140 (1974).

Although there are facts that distinguish this case from *Cohen,* other than merely the names of the parties, the logic applied by the New York Court of Appeals is compelling. It is true, for example, that *Cohen* involved a partnership, while Thomas, Mann & Smith was a corporation. It is also true that New York and Tennessee partnership law differs. Nevertheless, both paragraph 6(f) of the agreement in this case and the provision at issue in *Cohen* restricted the practice of law by an attorney who chose to leave the firm. The financial disincentive in leaving either Thomas, Mann & Smith or Lord, Day & Lord to practice law elsewhere works an impermissible restriction under DR 2–108.

In reaching this conclusion, we note that other courts have held various agreements to be invalid under DR 2–108. For example, the Iowa Supreme Court recently invalidated an agreement which denied deferred compensation to a withdrawing attorney if the attorney "committed an act detrimental to the partnership." *Anderson v. Aspelmeier Fisch, Power, Warner and Engberg,* 461 N.W.2d 598 (Iowa 1990). The Superior Court of New Jersey has held that an agreement between partners which divided their clients between them upon dissolution of a firm was violative of DR 2–108. *Dwyer v. Jung,* 133 N.J.Super. 343, 336 A.2d 498 (N.J.Super. Ch. 1975) a'ffd 137 N.J.Super. 135, 348 A.2d 208 (N.J.Super.A.D.1975). The Oregon Court of Appeals has invalidated an agreement that imposed a 40% penalty on stock valuation if the withdrawing attorney refused to sign a non-compete agreement and another that limited the amount a withdrawing partner could receive upon resuming practice in a certain geographical area. *Hager v. O'Connell, Goyak & Ball, P.C.,* 68 Or.App. 700, 683 P.2d 563 (1974); *Gray v. Martin,* 63 Or.App. 173, 663 P.2d 1285 (1983), rev. denied 295 Or. 541, 668 P.2d 384 (1983).

Finally, we reject the defendant's argument that the agreement is the sort of contract which falls under the retirement benefits exception in DR 2–108(A). Viewing the contract as a whole, as we must to determine the meaning of any part, *see Aetna Cas. & Sur. Co. v. Woods,* 565 S.W.2d 861 (Tenn.1978), we conclude that deferred compensation was to be paid to any shareholder leaving the firm, the only exception being that a withdrawing shareholder could not continue in the practice of law and still receive deferred compensation. The same paragraph that denies deferred compensation to a "withdrawing employee" who continues to practice law also makes provision for deferred compensation to be paid to a retiring employee and provides that a retiring employee may keep an office at the defendant firm and have access to clerical assistance there, without affecting the right to deferred compensation. Following the general rule that ambiguities in contracts are construed against the drafter, *Hanover Ins. Co. v. Haney,* 221 Tenn. 148, 425 S.W.2d 590 (1968), we conclude that the restriction on the practice of law at issue here was not in the nature of "a condition to payment of retirement benefits" so as to bring it within the exception stated in DR 2–108(A).

Accordingly, we conclude that the provision of the agreement conditioning the payment of deferred compensation upon a withdrawing shareholder's discontinuation of the practice of law violates the principles contained in Canon 2 and DR 2–108 of the Code of Professional Responsibility, Rule 8, Tennessee Supreme Court Rules. This provision is therefore void as against the public policy of Tennessee. The remainder of the agreement remains enforceable. *Julian v. American Nat'l Bank,* 21 Tenn.App. 137, 106 S.W.2d 871, 891 (1937), citing *Potts v. Gray,* 43 Tenn. 468, 470 (1866).

The judgments of the Court of Appeals and the trial court are reversed, and the costs of appeal are assessed to the defendant-appellee, Thomas, Mann & Smith, P.C. As noted, the law firm has disbanded since the initiation of this litigation. The question of the remedy to which the plaintiff is now entitled and from whom he may collect was not raised on appeal and cannot be

determined on the record before us. We therefore remand the case to the trial court for further proceedings on the judgment entered here.

Reversed and remanded.

REID, C.J., DROWOTA and O'BRIEN, JJ., and BROCK, Special Justice, concur.