Tom H. WHITESIDE, Appellant,

v.

GRIFFIS & GRIFFIS, P.C., et al., Appellees.

No. 03–93–00511–CV.

Court of Appeals of Texas, Third District.

July 12, 1995.

Rehearing Overruled Aug. 16, 1995.

Gary M. Bellair, Carr, Fouts, Hunt, Craig, Terrill & Wolfe, L.L.P., Lubbock, for appellant.

Jim Hund, McCleskey, Harriger, Brazill & Graf, L.L.P., Lubbock, for appellees.

Before POWERS, JONES and B.A. SMITH, JJ.

JONES, Justice.

Attorney Tom Whiteside, appellant, sued his former law firm, Griffis & Griffis, P.C., its various successors, and individual shareholders (collectively "Griffis Firm" or "Firm"),[1] appellees, to recover payment of a "goodwill factor" following his departure from the Firm. On cross-motions for summary judgment, the trial court determined that the contractual provision providing for the payment of goodwill to a departing shareholder violated the Texas Code of Professional Responsibility because it contained a condition restricting the shareholder's right to practice law. Texas Code of Professional Responsibility DR 2–108, *reprinted in* Tex.Gov't Code Ann., tit. 2, subtit. G app. (West 1988) (State Bar Rules art. X, § 9, since repealed) ("DR 2–108"). However, the court reserved for trial on the merits the issues of attorney's fees and severability of the restrictive provision. Following a bench trial on these issues, the court found the provision was not severable. The court rendered a take-nothing judgment on Whiteside's claims and awarded attorney's fees to the Firm. Whiteside appeals, raising ten points of error. We will affirm the judgment as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

Following a judicial clerkship, Whiteside joined the insurance defense practice at the Griffis Firm in 1977. Whiteside later became a partner in the Firm, making no capital contribution. Subsequently, the Firm incorporated. In 1982, Donald Griffis, G. Ben Woodward, and Whiteside executed a restrictive stock agreement, which is at the center of this dispute.

The stock agreement provided that on death, disability, or withdrawal from the Firm, a shareholder was automatically required to sell his stock back to the Firm at book value. Significantly, the agreement specifically stated that book value "shall not include good will" except as otherwise provided in the agreement. Section 3.7 of the agreement contained the following controversial exception:

> If a shareholder leaves ... the firm and will not thereafter practice law or compete against the Corporation within 300 miles of San Angelo for a period of 5 years ... and the Corporation continues after such shareholder leaves the Corporation, the base price shall be increased ... [t]o reflect a goodwill factor equivalent to the average annual gross income of the Corporation or its predecessor for the five fiscal years preceding.

Whiteside left the Griffis Firm on May 31, 1985 and immediately began practicing law within 300 miles of San Angelo at a Lubbock law firm. Pursuant to the provisions of the agreement, the Firm notified Whiteside that it accepted his automatic offer to sell his interest in the Firm at book value. On September 19, 1985, the Firm sent Whiteside a draft for $3,947.35, representing the book value of his shares, less certain deductions. Whiteside did not respond to the Firm or negotiate the draft. The Firm subsequently deposited these funds into a separate savings account.

On January 10, 1989, after more than three years of silence, Whiteside wrote to the Firm claiming entitlement to a goodwill factor in excess of $112,000. Despite having failed to satisfy the restrictive conditions of section 3.7 of the agreement, Whiteside asserted that the noncompetition provision was unreasonable and would be reformed by a reviewing court. He noted that "these agreements may not even be enforceable among lawyers." The Firm declined Whiteside's request to pay him a goodwill factor, but reiterated that it was willing to pay him the ten-

1. Besides Griffis & Griffis, P.C., appellees include: Griffis, Griffis, Whiteside & Woodward, P.C.; Griffis, Woodward, Colia & Motl, P.C.; Griffis, Colia, Motl & Junell, P.C.; Griffis, Motl & Junell, P.C.; Donald W. Griffis; G. Ben Woodward; Milton C. Colia; and Terri H. Motl.

dered book value for his shares, plus accumulated interest. Rather than accept this offer, Whiteside filed the present lawsuit.

Whiteside filed suit against the Firm in Lubbock County district court, claiming that the restrictive conditions of section 3.7 were unreasonable as to both time and distance, constituting an unreasonable restraint on trade under either the common law or the Texas Free Enterprise and Antitrust Act of 1983, Tex.Bus. & Com.Code Ann. §§ 15.01–.52 (West 1987 & Supp.1995). Arguing that the provision should be reformed to apply only to Tom Green County for one year, Whiteside claimed the goodwill factor on the theory that he practiced outside of what he considered a reasonable geographic limit. Whiteside also made a deceptive-trade-practices claim alleging consumer status and violation of "section 17.46(a)(12)."[2]

After venue was transferred from Lubbock County to Tom Green County,[3] the Firm moved for summary judgment on the basis that section 3.7 violated DR 2–108, which prohibits employment agreements restricting the right of a lawyer to practice law. The Firm contended that (1) any restriction on a lawyer's right to practice is void for public policy reasons and, as a result, section 3.7 could not be reformed as Whiteside requested; and (2) the restriction was not severable from the remainder of the stock agreement, so Whiteside could not recover the goodwill factor. Whiteside also moved for summary judgment on his restraint-of-trade claim.

The district court denied Whiteside's motion and ordered that he take nothing on his claims. The court granted the Firm's summary judgment motion in part, determining that section 3.7 violated DR 2–108 and was void as against public policy. However, concluding that fact issues existed as to the severability of section 3.7 and attorney's fees, the court reserved those issues for trial on the merits. Following a bench trial on those issues, the court found that the conditional promise to pay a goodwill factor was not severable from the void conditions in section 3.7. Further, the court found that had the parties known that the restrictions in section 3.7 were void, they would not have agreed to pay departing shareholders a goodwill factor at all. On the issue of attorney's fees, the court found that Whiteside's DTPA claim was groundless and brought in bad faith or for purposes of harassment. It also found that the Firm incurred a total of $23,500 in reasonable attorney's fees, primarily in connection with its counterclaim for declaratory judgment that section 3.7 violated DR 2–108.[4] Of these fees, the court allocated $7,500 as attributable to defense against Whiteside's DTPA claim. Against this award of attorney's fees, the court credited Whiteside $3,947.35—the book value of his stock at the time it was tendered.

Whiteside appeals this final judgment in ten points of error. The bulk of these points challenge the propriety of the summary-judgment orders, asserting error in the trial court's legal determination that section 3.7 violated DR 2–108 and reiterating his common-law and statutory restraint-of-trade claims. In addition, Whiteside attacks the trial court's determination that the void portion of section 3.7 was not severable from the remainder of the agreement. In addition to

**2.** Since section 17.46(a)(12) does not exist, Whiteside apparently intended to sue under the laundry list provision of section 17.46(*b*)(12). *See* Deceptive Trade Practices—Consumer Protection Act, Tex.Bus. & Com.Code Ann. § 17.46(b)(12) (West Supp.1995) (listing as deceptive "representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law").

**3.** The Lubbock County district court denied the Firm's motion to transfer venue. That court then found that section 3.7 of the agreement was an unreasonable restraint of trade and reformed the restriction to apply to the practice of law

within 60 miles of San Angelo for three years. Because Whiteside had not breached this condition as reformed, the court rendered judgment against the Firm for $112,742.60, an amount representing the claimed goodwill factor. The Firm appealed this judgment to the Amarillo Court of Appeals, which, in an unpublished opinion, reversed the judgment on venue grounds and ordered the cause transferred to Tom Green County.

**4.** The court also awarded $7,500 for appeal to this court, an additional $5,000 in the event of an appeal to the supreme court, and $2,500 in the event the supreme court grants the application for writ of error.

these issues, Whiteside asserts error in both the calculation of the offset credit and the award of attorney's fees. Finally, Whiteside raises points of error challenging the trial court's findings on laches, individual shareholder liability, and liability of the successor to the Firm. He does not challenge the award of attorney's fees for defense against the groundless DTPA claim.

## VIOLATION OF DR 2–108

The central issue in this case is whether the restrictive provision of the stock agreement violates DR 2–108 of the Texas Code of Professional Responsibility, which provides:

> DR 2–108. Agreements Restricting the Practice of a Lawyer.
>
> (A) A lawyer shall not be a party to or participate in a partnership or employment agreement with another lawyer that restricts the right of a lawyer to practice law after the termination of a relationship created by the agreement, except as a condition to payment of retirement benefits.[5]

Section 3.7 of the agreement does not impose a *direct* restriction on the right to practice law. Rather, it provides a financial disincentive to compete by linking payment of a goodwill factor to geographic and time limitations. Our inquiry is thus focused on whether a provision that creates an *indirect* restriction by offering a financial disincentive to practicing law violates DR 2–108 and is thus void as against public policy.[6]

Although this is an issue of first impression for the courts of our state, cases from other jurisdictions almost universally hold that financial disincentives similar to those offered in section 3.7 are void and unenforceable restrictions on the practice of law. *See Anderson v. Aspelmeier, Fisch,*

*Power, Warner & Engberg,* 461 N.W.2d 598, 601–02 (Iowa 1990) (conditioning payment of departing partner's interest in firm on refraining from detrimental acts such as competing against the firm violates DR 2–108); *Jacob v. Norris, McLaughlin & Marcus,* 128 N.J. 10, 607 A.2d 142, 148–49 (1992) (barring termination compensation to withdrawing partners who represent clients of the firm within one year void as against public policy); *Cohen v. Lord, Day & Lord,* 75 N.Y.S.2d 95, 551 N.Y.S.2d 157, 158, 550 N.E.2d 410, 411 (1989) (holding as a violation of DR 2–108 a provision of partnership agreement conditioning payment of uncollected partnership revenues on withdrawing partner's noncompetition); *Judge v. Bartlett, Pontiff, Stewart & Rhodes P.C.,* 197 A.D.2d 148, 610 N.Y.S.2d 412, 414 (App.Div.1994) (holding termination agreement requiring forfeiture of 75% of future benefits for competing within thirty-mile radius void as against DR 2–108); *Hagen v. O'Connell, Goyak & Ball,* 68 Or.App. 700, 683 P.2d 563, 565 (1984) (forcing withdrawing attorney to forfeit 40% of value of stock for failure to sign noncompetition agreement violates DR 2–108); *Gray v. Martin,* 63 Or.App. 173, 663 P.2d 1285, 1290–91 (1983) (requiring departing attorney to forfeit share of firm profits for practicing within three-county area violates DR 2–108); *Spiegel v. Thomas, Mann & Smith, P.C.,* 811 S.W.2d 528, 529–31 (Tenn.1991) (conditioning deferred compensation on not practicing law violates DR 2–108); *see also Blackburn v. Sweeney,* 637 N.E.2d 1340, 1343–44 (Ind.App.Ct.1994) (holding partnership dissolution agreement requiring nonadvertisement in certain area void as indirectly limiting client choice). The commentators concur that this is the majority view. *See* Robert W. Hillman, *Law Firm Breakups* § 2.3.3.2, at 31 (1990); Laurel S.

---

5. Effective January 1, 1990, the Texas Code of Professional Responsibility was repealed and replaced by the Texas Disciplinary Rules of Professional Conduct. *See* Tex. Disciplinary R. Prof. Conduct (1989), *reprinted in* Tex.Gov't Code Ann., tit. 2, subtit. G app. (West Supp.1995) (State Bar Rules art. X, § 9). However, by order of the supreme court, professional conduct prior to the effective date is still governed by the Code of Professional Responsibility. *Id.* The current Rules of Professional Conduct have a provision similar to DR 2–108. *See* Tex. Disciplinary R. Prof. Conduct 5.06 & cmt. (1989).

6. The disciplinary rules are quasi-statutory. *Kuhn, Collins & Rash v. Reynolds,* 614 S.W.2d 854, 856 (Tex.Civ.App.—Texarkana 1981, writ ref'd n.r.e.). They evidence the public policy of this state. *Baron v. Mullinax, Wells, Mauzy & Baab, Inc.,* 623 S.W.2d 457, 461 (Tex.App.—Texarkana 1981, writ ref'd n.r.e.). Although the disciplinary rules are not binding on our courts, they are highly persuasive and given the utmost consideration. *State v. Baker,* 539 S.W.2d 367, 372 (Tex.Civ.App.—Austin 1976, writ ref'd n.r.e.).

Terry, *Ethical Pitfalls and Malpractice Consequences of Law Firm Breakups,* 61 Temp. L.Rev. 1055, 1072–79 (1988); Kevin T. Caiaccio, Comment, Howard v. Babcock, *The Business of Law Versus the Ethics of Lawyers: Are Noncompetition Covenants Among Law Partners Against Public Policy?,* 28 Ga. L.Rev. 807, 816–17 (1994); Glenn S. Draper, Note, *Enforcing Lawyers' Covenants Not to Compete,* 69 Wash.L.Rev. 161, 164 (1994); Kirstan Penasack, Note, *Abandoning the Per Se Rule Against Law Firm Agreements Anticipating Competition,* 5 Geo.J. Legal Ethics 889, 892 (1992).

The rationale behind the majority view is clear. The purpose of DR 2–108 is to protect the public's right to select the attorney of their choice. *Anderson,* 461 N.W.2d at 601; *Jacob,* 607 A.2d at 148; *Cohen,* 550 N.E.2d at 411; *Spiegel,* 811 S.W.2d at 530; *see* 2 Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering* § 5.6:101 (1990); Terry, *supra,* at 1072; Draper, *supra,* at 163; Penasack, *supra,* at 901–03; Tex.Comm. on Professional Ethics, Op. 422, 48 Tex.B.J. 209 (1985). Indirect financial disincentives may interfere with this right just as much as direct covenants not to compete. A provision offering financial disincentives may force lawyers to give up their clients, thereby interfering with the client's freedom of choice. *Anderson,* 461 N.W.2d at 601; *Jacob,* 607 A.2d at 148; *Cohen,* 550 N.E.2d at 411; *Spiegel,* 811 S.W.2d at 530; Hillman, *supra,* § 2.3.3.2, at 32. This violates both the language and spirit of DR 2–108 by restricting the practice of law.

Whiteside directs us to a California Supreme Court opinion adopting the contrary position. *See Howard v. Babcock,* 6 Cal.4th 409, 25 Cal.Rptr.2d 80, 863 P.2d 150 (1993). In *Howard,* the court held that an agreement imposing a reasonable cost on departing partners who compete with the firm in a limited area is enforceable. *Id.* at 90, 863 P.2d at 160. Recognizing what it described as "sweeping changes in the practice of law," the court found that law firms have a financial interest in their clients and concluded that there was "no legal justification for treating partners in law firms differently in

this respect from partners in other businesses and professions." *Id.* at 87, 863 P.2d at 157. This, however, is clearly a minority position, as the court itself noted. *Id.* at 87–88, 863 P.2d at 157–58. The court specifically rejected as a "theoretical freedom" the concept of client choice in attorney selection that is the foundation of the majority rule. *Id.* at 88, 863 P.2d at 158.[7]

We are unwilling to follow this distinctly minority position and abandon the concept of client choice that we believe remains the premise underlying DR 2–108. Instead, we align ourselves with the majority of jurisdictions that have rejected financial disincentives as violative of DR 2–108. In so doing, we recognize that we may be holding attorneys to a higher standard than the commercial sector in general. While an indirect financial disincentive against competition or a reasonable covenant not to compete may have vitality in a commercial setting, we believe the strong public-policy concerns surrounding client choice warrant prohibition of lawyer restrictions. Consequently, we hold that an indirect financial disincentive, such as that embodied in section 3.7 of the Griffis agreement, violates DR 2–108 and is therefore void as against public policy.

■ Having concluded that the trial court correctly found section 3.7 of the agreement void and unenforceable, we must now review the trial court's determination that the Firm's promise to pay a goodwill factor could not be severed from the repugnant conditions. In general, the doctrine of severability applies when the original consideration of a contract is legal, but incidental promises within the contract are found to be illegal. *Williams v. Williams,* 569 S.W.2d 867, 871 (Tex.1978). Whether a void contractual provision can be severed depends on the language of the contract and the intent of the parties. *McFarland v. Haby,* 589 S.W.2d 521, 524 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.). The issue is whether the parties would have entered into the agreement absent the illegal parts. *Id.; see Rogers v. Wolfson,* 763 S.W.2d 922, 925 (Tex.App.— Dallas 1989, writ denied).

7. For a thorough critique of the *Howard* court's approach, see Caiaccio, *supra,* at 824–35.

To answer this question of intent, and hence severability, the district court in the present case conducted a trial on the merits. The court subsequently filed findings of fact that: (1) had the parties known that section 3.7 was void and unenforceable, they would not have agreed to pay a goodwill factor; (2) given the illegality of the section 3.7, it would be unreasonable for the Griffis Firm to pay Whiteside the goodwill factor; (3) it would be economically impossible for the Griffis Firm to pay all departing shareholders the goodwill factor; and (4) the obligation to pay the goodwill factor is indivisible and inseparable from the restrictions in section 3.7. Whiteside challenges the legal and factual sufficiency of the evidence to support these findings.

■ A trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing the legal and factual sufficiency of the evidence to support a jury verdict. *Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex.1991). The standards for review of legal and factual sufficiency are well established. *See Alm v. Aluminum Co. of Am.,* 717 S.W.2d 588, 593 (Tex.1986) (legal sufficiency), *cert. denied,* 498 U.S. 847, 111 S.Ct. 135, 112 L.Ed.2d 102 (1990); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (factual sufficiency).

■ The record in this case contains more than enough evidence to support the trial court's findings. Section 3.1 of the restrictive stock agreement specifically states that the value of the stock "shall not include goodwill except as hereinafter provided." The plain language of the agreement thus reflects that the parties did not intend to pay a goodwill factor to every departing partner. Further, Donald Griffis testified that when they entered into the agreement, no one contemplated that the restrictive conditions of section 3.7 violated DR 2–108. He testified that had they known, they would never have entered into the agreement, because the Firm could not have afforded to pay every departing partner a goodwill factor. He concluded that it would have cost the Firm $450,000 to pay three of the withdrawing partners a goodwill factor, which would have

put the Firm out of business. Ben Woodward also testified that the parties would not have entered into the agreement if they had known about the void provision, because it was not economically feasible to pay every departing partner a goodwill factor.

The only evidence in Whiteside's favor is section 6.2 of the agreement, which states that "[i]n the event any provision of this agreement is held to be invalid, illegal, or inoperative, for any reason, it is my intention that the remaining parts, *so far as possible and reasonable,* shall be effective and fully operable." (Emphasis added.) The record contains ample evidence, however, that it would be neither possible nor reasonable for the Firm to pay all departing partners a goodwill factor. The trial court expressly so found. Given this record, we conclude there is both legally and factually sufficient evidence to support the trial court's finding that the promise to pay a goodwill factor could not be severed from the void provisions in section 3.7.

Whiteside's final argument concerning DR 2–108 is that even if we determine that the void portion of section 3.7 is not severable under Texas law, we should still require the Firm to pay him a goodwill factor on public-policy or equitable grounds. The essence of his argument is that unless we reward him with a payment for goodwill, attorneys will have no incentive to challenge such provisions in the future, and firms will have no incentive to stop making such agreements. This equitable argument neglects the vital fact that it was the Griffis Firm, not Whiteside, who challenged the provision's compatibility with DR 2–108. We reject Whiteside's invitation to ignore settled Texas law governing severability of void provisions and craft him an equitable remedy on these facts. We overrule Whiteside's points of error two, three, four, and seven.

## VIOLATION OF TEXAS FREE ENTERPRISE ACT

Whiteside also contends that regardless of our decision concerning DR 2–108, violation of the Texas Free Enterprise Act provides an independent basis for relief. He directs us to the general provisions of the Act that

"[e]very contract ... in restraint of trade or commerce is unlawful." Texas Free Enterprise and Antitrust Act of 1983, Tex.Bus. & Com.Code Ann. § 15.05(a) (West 1987). He argues that because the trial court found that section 3.7 violated DR 2–108, it must also be a per se violation of the Texas Free Enterprise Act. We disagree.

■ As our preceding discussion of DR 2–108 reflects, it is not necessarily appropriate to analyze restrictions on the practice of law using the same rubric as in commercial transactions. We believe the strong public-policy considerations of client choice in attorney selection preclude the application of commercial standards to attorney restrictive covenants. *See Dwyer v. Jung*, 133 N.J.Super. 343, 336 A.2d 498, 500 (Ct.Ch.Div.), *aff'd*, 137 N.J.Super. 135, 348 A.2d 208 (Ct.App.Div. 1975). What might well be a reasonable and permissible restriction in a commercial setting may nonetheless violate the heightened public-policy interests surrounding restrictions on the practice of law. We therefore reject Whiteside's contention that a violation of DR 2–108 automatically equates to a violation of the Texas Free Enterprise Act.

■ Moreover, even if we were to apply the general commercial standards of the Act to section 3.7, Whiteside's argument would fail on the merits. Our supreme court described the appropriate analysis for a commercial noncompetition agreement in *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670 (Tex. 1990). Not every covenant not to compete is prohibited by the Act, but only those contracts that *unreasonably* restrain trade. *DeSantis*, 793 S.W.2d at 687. The court expressly held that noncompetition agreements are not per se violations of the Act, but must be analyzed under the rule of reason.[8] *Id.* at 688. Following *DeSantis*, we hold that section 3.7 is not a per se violation of the Act. To determine if the section violated the Act, we would follow the supreme court's guidance and apply a rule-of-reason analysis. On

appeal, however, Whiteside raises only his per se argument. Because *DeSantis* holds that such an agreement is not a per se violation, and because Whiteside limits his appeal to this issue, we overrule point of error five.[9]

## ATTORNEY'S FEES AND OFFSET CREDIT

■ The trial court awarded the Griffis Firm $23,500 in attorney's fees under the Declaratory Judgments Act and Deceptive Trade Practices Act. *See* Uniform Declaratory Judgments Act, Tex.Civ.Prac. & Rem. Code Ann. § 37.009 (West 1986); Deceptive Trade Practices—Consumer Protection Act, Tex.Bus. & Com.Code Ann. § 17.50(c) (West 1987). The court found that $7,500 of this amount was attributable to the Firm's defense against Whiteside's DTPA claim. Whiteside challenges only the trial court's award of attorney's fees to the Firm under the Declaratory Judgments Act. We review an award of attorney's fees under an abuse-of-discretion standard. *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex.1985). A trial court abuses its discretion when it acts in an unreasonable and arbitrary manner, or when it acts without reference to any guiding principles. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex.1991); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

■ The Firm presents two bases on which to affirm the award: (1) attorney's fees were "just and equitable" under the Declaratory Judgments Act because it was defending against Whiteside's request for declaratory relief; and (2) the Firm's request to declare section 3.7 violative of DR 2–108, raised as a counterclaim, constitutes affirmative relief warranting an award of attorney's fees under the Act. We conclude that neither of these arguments provides a basis upon which the

8. Rule-of-reason analysis tests the actual effect of the restraint of trade on competition. For discussion, see *DeSantis*, 793 S.W.2d at 688.

9. In light of our holdings that Whiteside cannot recover on the contract or under the Free Enterprise Act, several additional points of error need

not be addressed. These include: point of error eight, concerning the Firm's affirmative defense of laches; point of error six, regarding liability of the individual shareholders; and point of error nine, alleging liability of Griffis, Motl & Junell, P.C. as a successor to the Griffis Firm.

trial court could properly award attorney's fees under the Act.

Whiteside's suit alleged only two causes of action: a restraint-of-trade claim and a DTPA violation. He did not seek relief under the Declaratory Judgments Act. Although attorney's fees are permissible when a party defends against a claim under the Declaratory Judgments Act, one of the parties must properly invoke the statute. *See Knighton v. International Business Machs. Corp.*, 856 S.W.2d 206, 210 (Tex.App.—Houston [1st Dist.] 1993, writ denied); *Hartford Casualty Ins. Co. v. Budget Rent–A–Car Sys., Inc.*, 796 S.W.2d 763, 771 (Tex.App.—Dallas 1990, writ denied). Because Whiteside did not invoke the Declaratory Judgments Act, the Firm cannot properly recover fees for defending against Whiteside's claims on this basis.

Likewise, the Firm itself did not properly invoke the Act. While a counterclaim can sometimes provide a foundation for an award of attorney's fees under the Declaratory Judgments Act, the counterclaim must do more than mirror the plaintiff's cause of action. *HECI Exploration Co. v. Clajon Gas Co.*, 843 S.W.2d 622, 638 (Tex.App.—Austin 1992, writ denied). The counterclaim must seek some affirmative relief. *Id.* at 638–39. The Firm's counterclaim to declare section 3.7 void under DR 2–108 is nothing more than its defense to Whiteside's initial restraint-of-trade claim. Couching a defense as a counterclaim under the Declaratory Judgments Act is "a mere vehicle to recover attorney's fees." *See id.* at 638; *see also Texas Liquor Control Bd. v. Canyon Creek Land Corp.*, 456 S.W.2d 891, 895 (Tex.1970). This is impermissible. We sustain Whiteside's first point of error and will reform the judgment to reflect an award of $7,500 in attorney's fees, representing the unchallenged attorney's fee award for the groundless DTPA claim.[10]

Against this award of attorney's fees, Whiteside argues that the trial court erred by granting him an offset credit that did not include interest on the book value of his stock. This point is meritless. Unconditional tender by a debtor of the amount due defeats a claim for interest on the obligation after the tender. *Staff Indus., Inc. v. Hallmark Contracting, Inc.*, 846 S.W.2d 542, 549 (Tex.App.—Corpus Christi 1993, no writ); *Arguelles v. Kaplan*, 736 S.W.2d 782, 784 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.). It is undisputed that following Whiteside's departure in 1985, the Firm tendered the book value of his shares, which was $3,947.35. Whiteside did not respond to the offer or negotiate the draft. The Firm later deposited the funds into a separate savings account. When the Firm properly tendered the amount owed to Whiteside, it relieved itself from any further interest obligations.[11] Consequently, the trial court did not err in applying an offset credit of $3,947.35. Point of error ten is overruled.

## CONCLUSION

The trial court properly resolved the cross-motions for summary judgment for the Firm, because section 3.7 of the stock agreement violates DR 2–108 and is void as against public policy. The evidence is legally and factually sufficient to uphold the trial court's finding that this restrictive provision cannot be severed from the conditional promise to pay a goodwill factor to a departing shareholder. However, the trial court abused its discretion in awarding the Firm attorney's fees under the Declaratory Judgments Act. We modify the judgment to award to the Firm attorney's fees of $7,500, less an offset credit of $3,947.35. As so modified, the judgment is affirmed.

10. Recovery of attorney's fees for defending against the groundless DTPA claim is a separate issue controlled by DTPA § 17.50(c). Whiteside does not challenge the award of these attorney's fees.

11. The trial court specifically found that "the Griffis Firm properly and timely tendered" to Whiteside the value of his stock. Implicit in this finding of proper tender is that it was unconditional. *See Baucum v. Great Am. Ins. Co.*, 370 S.W.2d 863, 866 (Tex.1963) ("A tender is an unconditional offer by a debtor or obligor to pay another ... a sum not less in amount than that due on a specific debt or obligation."). On appeal, Whiteside does not challenge this finding of fact or the unconditional nature of the tender.