IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 9, 2002 Session

# FLEET ONE, LLC v. JOHN COOK, ET AL.

**Direct Appeal from the Circuit Court for Macon County**
**No. 4618      Honorable John D. Wooten**

No.  M2001-03048-COA-R3-CV - Filed June 5, 2002

This appeal challenges the dismissal of a defendant.  The circuit court granted John Cook's Tenn. R. Civ. P. 41.02 motion for involuntary dismissal and found that he did not personally guarantee the debt of Bennett Hill Spring, LLC when he signed the Credit Application as "Operations Manager." Appellant challenges the circuit court's decision to grant the motion which dismissed John Cook as an individual defendant.  As discussed below, we affirm the judgment of the circuit court granting John Cook's motion for involuntary dismissal.  The circuit court was correct that, from a reading of the contract as a whole, it is not apparent that John Cook personally guaranteed payment by signing the Credit Application.

**Tenn.R.App.P. 3(a) Appeal as of Right; Judgment of the Circuit Court Affirmed.**

WALTER C. KURTZ, SP. J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and WILLIAM C. KOCH, JR., JJ., joined.

Melissa Blackburn, Nashville, Tennessee, for appellant, Fleet One, LLC

Robert M. Burns and Stephen W. Elliott, Nashville, Tennessee, for appellees, John Cook and Bennett Hill Spring, LLC

## OPINION

This is an appeal by Fleet One, LLC ("Fleet One"), challenging the ruling of the circuit court which granted the defendant John Cook's Tenn. R. Civ. P. 41.02 motion for involuntary dismissal. The issue before us is:

> Whether the circuit court made a correct determination that Mr. Cook did not personally guarantee the amounts owed to Fleet One when he signed the Credit Application for Bennett Hill Spring, LLC as "John Cook, Operations Manager."

1

## I.  Facts and Procedural History

Bennett Hill Spring, LLC  ("Bennett Hill") is in the business of delivering bottled water.  As such, it operates trucks that require frequent refueling.  Fleet One sells fuel to businesses by issuing fuel cards that are used to purchase fuel at various gas stations.  On August 16, 2000, Bennett Hill executed and delivered to Fleet One a Credit Application for the issuance of Six Thousand Dollars ($6,000.00) in fuel cards.  The Credit Application was signed by appellee as "John Cook, Operations Manager."

The Credit Application contains the following language immediately before the signature line.

> Permission is herewith granted to obtain credit information from all listed references, including my bank.  All financial information submitted in support of this new account and credit application is true and complete in all respects.  My account is subject to a late charge of 1.5% per month (18% per annum) on all past due invoices.  Furthermore, I understand that my Cards may be turned off if my account is past due and that any collection fees (including attorney fees) incurred by Fleet One, which the parties hereby fix at 33 1/3 of any balance due plus court costs, will be borne by my account.  I have received a copy of Fleet One Trade Policies and agree to abide by them, and as they may be amended from time to time.
>
> I assume personal and individual responsibility and liability, and guarantee payment of all charges due and payable to Fleet One by the company or corporation listed herein.

Bennett Hill paid the invoices from Fleet One for a period of time.  However, Bennett Hill eventually stopped paying for the services on October 15, 2000.  As a result Fleet One filed a civil warrant on January 23, 2001, in the General Sessions Court of Macon County, Tennessee for fuel purchases for the weeks of October 15, 2000, October 29, 2000, November 5, 2000, November 12, 2000, and November 19, 2000, alleging unpaid charges totaling Four Thousand One Hundred and Thirteen and 50/100 Dollars ($4,113.50).  A judgment was taken by Fleet One against the defendants, which was then appealed to circuit court.  The appeal was heard non-jury on September 28, 2001.

At the conclusion of the plaintiff's proof, the defendants moved for an involuntary dismissal.  The trial court granted the motion as to John Cook only and a judgment in the amount of Six Thousand One Hundred Forty-nine and 09/100 Dollars  ($6,149.09) plus post-judgment interest at a rate of 10% per annum was entered against Bennett Hill at the close of all the proof.  The Order was signed on October 11, 2001.  Fleet One has appealed alleging that the trial court improperly dismissed the case against Mr. Cook.

## II. Standard of Review

Appellate review of a trial court's decision is de novo upon the record accompanied by a presumption of correctness of the findings unless the preponderance of the evidence is otherwise. See Tenn. R. App. P. 13(d). In a non-jury case, when a Tenn. R. Civ. P. 41.02 motion is made at the close of plaintiff's proof, the trial court evaluates it as though the court was making a decision at the close of all the proof by the parties. See City of Columbia v. C.F.W. Constr. Co., 557 S.W.2d 734, 740 (Tenn. 1977). If proven by a preponderance of the evidence, the trial court may render a judgment against the plaintiff or decline to render a judgment until the close of all the evidence. See Tenn. R. Civ. P. 41.02. This Court may only overturn the judgment of the trial court if there was an error of law or unless the preponderance of the evidence is otherwise.

Here, we affirm the trial court's decision dismissing John Cook individually. From a complete reading of the contract, it is not clear that the guaranty language was intended to bind Mr. Cook as a guarantor. The contract was ambiguous regarding the guaranty and such ambiguity must be construed against the appellant/drafter.

## III. Discussion

The trial court concluded that Mr. Cook should have been dismissed from the suit as it was not apparent that he individually guaranteed payment on the contract and we agree. While the last sentence in the contract might indicate that the individual signing the contract was to be personally liable, a complete reading of the contract leads more to the conclusion that the guaranty related to the party seeking the credit. Courts must consider the entire contract when determining the meaning of its terms. See Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd., 690 S.W.2d 231, 237 (Tenn. 1985).

The general rule is that a corporate officer's signature preceded by a corporation's name and followed a designation of the signature's corporate capacity is evidence that the officer was acting as an agent of the corporation. See Bill Walker & Assoc., Inc. v. Parrish, 770 S.W.2d 764, 770 (Tenn. App. 1988). This general rule, however, does have exceptions when the contract reveals a different intention. Id.

> It is possible for an officer of a corporation to avoid personal liability by signing his name and adding his title and the name of the corporation. However such a signature does not produce the presumptive effect of a signature in which the name of the corporation appears first followed by the word, "by" or "per" and the name of the corporation. In the former case, additional evidence, such as test of the instrument or evidence of the joint intent of the parties, would be required to establish that only the corporation was to be bound. In the latter case, the intention of the parties is self evident from the form of the signature.

Cone Oil Co., Inc. v. Green, 669 S.W.2d 662, 664 (Tenn. App. 1983). In this case Mr. Cook did not

use words such as "by" or "per" when he signed as "Operations Manager." However, we are of the opinion that the language and form of the contract at issue here, in its entirety, do not support a conclusion that Mr. Cook personally guaranteed the debt.

Appellant cites the case of Creative Resource Management, Inc. v. Soskin, No. 01A01-9808-CH-00016, 1998 WL 813420 (Tenn. App. Nov. 25, 1998) for the proposition that the signature of Mr. Cook was indeed a personal guaranty. In Soskin this Court overruled the trial court's determination that Mr. Soskin was not individually liable for the debt of his limited liability company. On appeal, Mr. Soskin argued that he signed the contract in only a representative capacity in his role as president of the LLC. Id. at *2. The important language of the Soskin contract was as follows:

> In the body of the contract the pronouns "we" and "you" refer to CRM and the "client" respectively.

> By affixing my hand and seal to this agreement, I personally guarantee any and all payments payable as represented and outlined in this agreement including but not limited to payrolls, taxes (state and federal), insurance premiums, and all other fees aforementioned in paragraph VII.

Id. at *1. This Court ruled that the language of the contract with the definition of the terms contained a personal guaranty and Mr. Soskin was liable for the company's debt. Id. at *2.

The trial court apparently considered this decision in rendering its decision on the Tenn. R. Civ. P. 41.02 motion.

> Well, I want to break this down. First of all, he has made a Motion for really a directed verdict here and I'm not treating this both as a corporate defendant and also a personal defendant. . . .

> I haven't read that one, but I have read this one, and the Chancellor down in Davidson County ruled in favor of the debtor down there, and I have looked at length at the facts of this case. Apparently Mr. Soskin . . . signed that particular contract down in Davidson County. I don't know if he just signed it personally or I don't know if he signed it as the president of the Nashville Pro Hockey LLC -- apparently he just signed it, maybe just his name, but in this particular case, I note that in the application for credit, Mr. Cook signed this as the operation's manager. . . . [T]hat signifies a title to me.

> So I don't think I'm necessarily bound by this unreported case, Ms. Blackburn, but even if I were to accept your argument, I think that what he has done, even though there's some language about personally guaranteeing something above that, that signature line says signature of proprietor or partner or public officer, and he notes

4

that he's the operation's manager, so I think that kind of takes him out of that personal guarantee situation. I think it's distinguishable -- so with regard to the individual John Cook, I'll grant your Motion.

In this case, the language of the contract was not as clear as in <u>Soskin</u> and is, therefore, distinguishable. Without the benefit of a definition of the terms, we must read the contract in its entirety to gleam their intended meaning. In the paragraph before the guaranty language, the Credit Application refers to "I" and "my" with regard to banks, accounts, and cards. The Credit Application then begins the sentence indicating a guaranty with "I." Without an appropriate definition or distinction of the terms in the contract, we must assume that the party referenced in the first paragraph is also the party designated in the second related to the guaranty.

The Credit Application does not seek personal information from Mr. Cook. The Credit Application seeks references, bank and trade information, and credit information for Bennett Hill. Mr. Cook was not required to provide any information mentioned in the first paragraph of the Credit Application before the signature line. Therefore, a complete reading of the contract supports the conclusion that the "I" in the guaranty section apparently refers to Bennett Hill as it did in the section above. Mr. Cook's signature as "Operations Manager" does not personally obligate him for the debt. The language of the contract is sufficiently ambiguous to preclude a finding that Mr. Cook was personally guaranteeing the debt.

The contract terms are vague on this point as they are all set out above the signature line and there appears to be no logical variation between the debtor and guarantor. Any vagueness with regard to the instrument must be construed against the drafter of the contract, Fleet One. <u>See</u> <u>Spiegel v. Thomas, Mann & Smith, P.C.</u>, 811 S.W.2d 528, 531 (Tenn. 1991).

## IV. Conclusion

For the aforementioned reasons, the decision of the trial court granting appellee's motion for involuntary dismissal is affirmed. Costs of this appeal are taxed to the appellant, Fleet One, for which execution may issue if necessary.

_____
WALTER C. KURTZ, SPECIAL JUDGE

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 9, 2002 Session


**FLEET ONE, LLC v. JOHN COOK, ET AL.**


**Direct Appeal from the Circuit Court for Macon County**
**No. 4618   Honorable John D. Wooten**

--------------------


**No.  M2001-03048-COA-R3-CV**

--------------------


**JUDGMENT**


This cause came on to be heard upon the record on appeal from the Macon County Circuit Court, the briefs of the parties, and the arguments of counsel.  Upon consideration of the entire record, this Court finds and concludes that the trial court's judgment should be affirmed

In accordance with the opinion filed contemporaneously with this judgment, it is, therefore, ordered, adjudged, and decreed that the trial court's judgment be and is hereby affirmed, and that the cause be remanded to the trial court for further proceedings consistent with this Court's opinion.

It is further ordered that the costs of this appeal be taxed to Fleet One, LLC, principal, and Melissa Blackburn, surety, for which execution may issue if necessary.