**434**

BIG FORK MINING CO., INC.,
Plaintiff/Appellee,

v.

KENTUCKY CENTRAL INSURANCE
COMPANY, Defendant/Appellant.

Court of Appeals of Tennessee,
Middle Section at Nashville.

July 29, 1994.

Application for Permission to Appeal
Denied by Supreme Court
Nov. 7, 1994.

Paul D. Kelly, Jr., Kelly, Kelly & Gouger, P.C., Jasper, and Michael W. Boehm, Spears, Moore, Rebman & Williams, Chattanooga, for plaintiff/appellee.

Stuart F. James, Leitner, Warner, Moffitt, Williams, Dooley, Carpenter & Napolitan, Chattanooga, for defendant/appellant.

### OPINION

TODD, Presiding Judge.

Plaintiff sued defendant upon its written promise to pay plaintiff $50,000 upon the performance of a certain condition. The Trial Court, sitting without a jury, held that the condition had been substantially performed and found for the plaintiff. Defendant appealed and presented the following issues:

> Whether the trial court erred in ruling for the plaintiff and in overruling Kentucky Central's Motion for Directed Verdict because the plaintiff failed to meet its burden of proof on the essential elements of its case.

> Whether the trial court, assuming the plaintiff did meet its burden of proof, erred in not rescinding the contract because there was a failure of consideration and because the plaintiff could not abide by the terms and conditions of the contract.

*—Background—*

Plaintiff, a mining company, applied to the State for a permit to mine a designated property. The application was approved, but the permit was not issued awaiting the required reclamation bond.

Mitchell Mining Co. and plaintiff agreed for Mitchell to mine on the property and pay a royalty to plaintiff. In order to obtain the issuance of plaintiff's permit, Mitchell paid defendant to sign plaintiff's $96,000 reclamation bond and deposited $50,000 with defendant to guarantee defendant against loss. The permit was issued to plaintiff.

Mitchell applied to the State to transfer the permit to Mitchell's name, but this was never done. Mitchell mined under plaintiff's permit and then bankrupted without reclaiming the land.

The State called on plaintiff and defendant to reclaim the land as required by the bond. Defendant signed an agreement with plaintiff which provided:

Whereas, the insurance company is surety on a surface mine performance bond in the amount of $96,000.00, being Bond No. BD–400111 covering 64 acres of land permitted by the State of Tennessee under Permit No. 82–40, a copy of such bond being attached hereto as Exhibit A, and

Whereas, there presently exists a question concerning the responsibility for reclamation of this 64 acre site between Big Fork and the State of Tennessee, and

Whereas, the potential exists that the insurance company may be required to pay some part or all of the aforementioned bond to the State of Tennessee, and

Whereas, Big Fork and the insurance company, by this agreement, wish to resolve, as between themselves, their potential liabilities with the State of Tennessee to the extent provided herein.

Now, therefore, in consideration of $1.00 cash in hand paid to one another, the mutual promises and covenants contained herein and other good and valuable considerations, the receipt of all of which is hereby acknowledged, the parties hereto agree as follows:

1. The insurance company will immediately modify its existing performance bond, being Bond No. BD–400111, to include the United States of America as an assured party and payee thereunder.

2. Big Fork shall file, as soon as it reasonably can, a permit application for a coal surface mining permit (hereinafter "new permit") with the State of Tennessee for the same 64 acres of land previously permitted under the Permit No. 82–40.

3. If such permit application is approved, whether by the State of Tennessee or the Office of Surface Mining, and a performance or reclamation bond has been set and agreed upon by the permitting authority and Big Fork, Big Fork will attempt to make arrangements for a surety (other than the insurance company) acceptable to the permitting authority, to post the bond for such new permit and site.

4. The performance bond on the new permit shall not be made unless, at the same time, the insurance company is totally released from any and all obligations on, under, or as the result of Bond No. BD–400111 and the insurance company has paid to Big Fork the sum of Fifty Thousand Dollars ($50,000.00).

5. In the event the permit application for the new permit is not approved by the appropriate and authorized permitting authority; or a bond in an amount agreed to by the permitting authority and Big Fork from a surety other that the insurance company cannot be obtained; or a full release of the insurance company from any and all obligations under Bond No. BD–400111 cannot be obtained; then this agreement shall terminate without further obligation, liability or responsibility under this agreement on the part of any of the parties hereto to any of the other parties hereto and the relationship of the parties hereto shall be the same as if they had never entered into this agreement.

Defendant amended its bond to include the United States Government as agreed.

The quoted contract contemplated that plaintiff would obtain a larger reclamation bond to replace the bond of defendant, but plaintiff was unable to secure a replacement bond. Instead, plaintiff spent over $200,000 in performing reclamation which satisfied the claims of both state and federal authorities, thereby satisfying the obligations of plaintiff and defendant on the $96,000 reclamation bond signed by defendant.

Plaintiff brought this suit to collect the $50,000 promised by the defendant in the above contract. It appears that no answer was filed by defendant, but the parties agree that the cause was tried "under an assumed general denial of liability."

■ As stated, the Trial Judge, sitting without a jury, resolved the issues in favor of plaintiff and awarded plaintiff judgment for $50,000, plus pre-judgment interest of $6,666.67. The issues on appeal are stated above.

Defendant insists that it is not obligated to pay the $50,000 to plaintiff because plaintiff did not perform the condition of the promise, i.e., the securing of a substitute bond to replace and release the obligations of defendant on the $96,000 bond signed by defendant.

Plaintiff responds that the true purpose of the condition (i.e. release of defendant) was accomplished, thereby effecting substantial performance of the condition.

Defendant's rejoinder is that plaintiff was merely performing its obligation as principal on the bond and holder of the permit and would have been compelled to do so even if the agreement had never been executed by plaintiff and defendant.

This reasoning of defendant would be persuasive except for the fact that the need for reclamation was not created by any mining operations by plaintiff, but by the operations of Mitchell who had deposited $50,000 with defendant to assure defendant that the required reclamation would be accomplished. If defendant's position should prevail in this case, defendant would realize a windfall of $50,000.

Although plaintiff and defendant as surety were obligated to the State (and, by amendment) to the Federal Government, to reclaim the land damaged by Mitchell, it was Mitchell who was morally and primarily obligated to defendant and plaintiff to repair the damage done by it, as evidenced by the deposit by Mitchell of $50,000 with defendant to secure performance of that obligation. If Mitchell had reclaimed the land, defendant would have been obligated to refund the $50,000 to Mitchell. Since Mitchell is in bankruptcy and cannot be expected to perform the reclamation and claim the $50,000 refund, it is only fair and just that plaintiff, who performed Mitchell's duty should be equitably subrogated to the right of Mitchell to the $50,000.

■ Defendant admits that it has been released, but not because of plaintiff's reclamation efforts. The release from the State contains the following "remarks:"

Due to language in the Board of Reclamation Review Order stating that if the site is not repermitted and rebonded, everything reverts back to the status at the time of the request to the Board, bond is being returned to the operator. This is an interim site and thus is due full bond return according to the AG's decision to return all interim program permit bonds.

The quoted remarks refer to an opinion of the Attorney General that the authority of the State to enforce mining reclamation had been preempted by federal legislation. It was for this reason that the bond signed by the defendant was amended to include the federal government.

Defendant asserts that there is no evidence that its liability to the federal government under the amended bond has been released. The uncontradicted testimony of Marvin Fletcher shows that reclamation was completed, revegetation had been successfully established and that the U.S. Office of Surface Mining (O.S.M.) had released all jurisdiction over the site. Standing uncontradicted, this evidence establishes substantial compliance with the condition of obtaining the "release" of defendant's obligation on the bond. The record contains a letter from the Office of Surface Mining of the United States Department of the Interior to plaintiff stating:

On June 17, 1992, we evaluated this site for completed reclamation.

Surface coal mining and reclamation operations have been successfully completed according to the requirements applicable to this site. Therefore, we are removing this site from our list of units to be inspected under the Tennessee Federal Pro-

gram pursuant to the Surface Mining Control and Reclamation Act of 1977.

The uncontradicted evidence shows that the obligation of plaintiff to reclaim the site was performed. Thereby plaintiff and defendant were released by performance.

Defendant asserts that the contract should be released because of a complete failure of consideration. This insistence is based upon a hypertechnical view of the agreement. As heretofore observed, the purpose of the agreement was to provide defendant relief from a $96,000 liability in exchange for the $50,000 deposit held for indemnity. Relief was provided, hence the promised payment should be paid. Performance of its obligation cost defendant nothing. Defendant has the deposit by Mitchell of $50,000 to satisfy its obligation to plaintiff without expense to defendant.

In 17A Am.Jur.2d—Contracts—§ 618–p. 627 is found the following text:

> Where parties capable of contracting deliberately enter into a written contract by which there is created a condition precedent to a right of action, such condition must be performed or its requirements waived or excused. With regard to conditions precedent, there must, if such conditions have not been waived or excused, be at least a substantial performance thereof in order to authorize a recovery as for performance of the contract....

The accomplishment of the purpose and objective of the condition precedent constituted a substantial performance of the condition. In 17A Am.Jur.2d § 631 p. 631 (p. 640?) is found the following text:

> Although there is some early authority in support of the rule that a party must strictly or literally perform the stipulations on his part before the other party is obligated to perform, unless the promises are independent, the modern authorities support a more liberal rule. Thus, it is said that the law looks to the spirit of the contract and not the letter of it, and that the question therefore is not whether a party has literally complied with it, but whether he has substantially done so. This has long been the rule in equity....

In the present case, the defendant has received all of the benefits of the performance of the condition precedent, at heavy expense to the plaintiff. Every consideration of justice and equity demands that defendant pay the agreed price of the benefit without expense to itself by utilizing the fund which it holds from Mitchell for the purpose.

Plaintiff's complaint sought recovery under the alternate theories of *quantum meruit*, implied contract and estoppel. However, these alternative grounds need not be discussed in the light of the foregoing.

The judgment of the Trial Court is affirmed. Costs of this appeal are adjudged against the appellant. The cause is remanded to the Trial Court for enforcement of its judgment.

Affirmed and Remanded.

LEWIS and CANTRELL, JJ., concur.