# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### November 28, 2012 Session

## RAMIN SAEEDPOUR v. VIRTUAL MEDICAL SOLUTIONS, LLC, ET AL.

**Appeal from the Chancery Court for Davidson County**
No. 11554I    Claudia Bonnyman, Chancellor

_____

**No. M2012-00994-COA-R3-CV- Filed April 5, 2013**

_____

Doctor sued Seller of medical equipment for a refund of the purchase price of the equipment pursuant to a money back guarantee; Seller counterclaimed for attorney's fees and litigation costs pursuant to a separate purchase agreement. The trial court granted Seller's motion for summary judgment with respect to the guarantee on the basis that Doctor failed to meet a condition precedent; the trial court also granted Doctor's motion for partial summary judgment with respect to Seller's request for fees and costs on the basis that the guarantee and the purchase agreement were separate contracts. Doctor and Seller appeal. Finding no error, we affirm both judgments.

**Tenn. R. App. P. 3; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P. J., M. S., and ANDY D. BENNETT, J., joined.

Allen Woods, Nashville, Tennessee, for the appellant, Ramin Saeedpour.

J. Ross Pepper and Timothy Aaron Roberto, Nashville, Tennessee, for the appellees, Virtual Medical Solutions, LLC, and Richard Gant.

## OPINION

### I. Facts & Procedural History

In 2009, Ramin Saeedpour ("Plaintiff"), a chiropractor who owns Dunn Chiropractic Clinic, purchased a BAX3000 Allergy Relief System ("BAX3000") from Virtual Medical Solutions, LLC ("VMS"), a Florida-based company. In negotiating the purchase, Plaintiff and his business partner, James Lachs, communicated primarily with Richard Gant who was the sole officer of VMS.

Plaintiff and VMS executed a Purchase Agreement for the BAX3000 and specified training and support services; the Purchase Agreement was not dated.[1] On October 13, 2009, Plaintiff and VMS executed a document entitled, "350% Income-Certain Conditional Money Back Guarantee" (the "Guarantee"). The Guarantee stated in relevant part:

> If, after twelve months as a BAX3000 Demo Doctor, Physician proves that during that time frame: (a) he or she has surveyed all of his or her patients and received a signed proprietary VMS Allergy Relief Survey from them; and (b) he or she has mentioned the availability of the new BAX3000 Allergy Relief System and [its] treatment potential for eliminating allergies to all of his or her patients; and (c) he or she has suggested treatment to his or her patients, when therapy is appropriate; and (d) he or she has had qualified or certified personnel available at all times to provide the BAX3000 testing and treatment protocols; and (e) the Physician has failed to generate an increase in collections attributed to the BAX3000 Allergy Relief System of at least $38,500, [VMS] will: (1) refund $33,000 of the original Purchase Price AND (2) proportionally refund up to $11,000 of the first year's fixed costs . . . based on a percentage of shortfall.

On April 27, 2011, Plaintiff filed this action against VMS and Mr. Gant ("Defendants") alleging that Defendants breached the Guarantee agreement by refusing to issue a refund to Plaintiff, that Defendants committed fraud because they "never intended to abide by the terms of the Guarantee," and that Plaintiff was fraudulently induced to enter into the Purchase Agreement; Plaintiff sought to hold Mr. Gant personally responsible by piercing the corporate veil of VMS.

Defendants answered, denying that they breached the Guarantee; they counterclaimed for an award of attorney's fees and litigation costs pursuant to the terms of the Purchase Agreement. Defendants later amended their counter-complaint to make additional factual contentions regarding the circumstances surrounding the transaction and the contents of the Purchase Agreement and the Guarantee; the amended counter-complaint requested a judgment for attorney's fees and litigation costs plus pre- and post-judgment interest.[2]

---

[1] According to the brief for Defendants, the Purchase Agreement was executed on October 13, 2009, contemporaneously with the Guarantee.

[2] According to Plaintiff's brief, Plaintiff moved to dismiss Defendants' counter-complaint and, in response, Defendants filed an amended counter-complaint; while the record contains the Defendants' amended counter-complaint, it does not contain the Plaintiff's motion to dismiss or the court's order permitting Defendants' to amend their counter-complaint. Matters relating to these pleadings are not at issue on appeal.

In due course, the Defendants filed a Motion for Summary Judgment; the motion was supported by a statement of material facts as required by Tenn. R. Civ. P. 56.03, affidavits of Gant and Defendants' counsel, and deposition transcripts of Plaintiff, Gant, Lachs, and Trey Brackman, an employee of the Clinic. Plaintiff responded to Defendant's motion and statement of material facts; he accompanied his response with his affidavit. Plaintiff also filed a motion for partial summary judgment in which he sought dismissal of Defendants' amended counter-complaint.

After a hearing the court granted the Defendants' motion, holding that Plaintiff had not produced evidence that he had "substantially performed the condition precedent requiring him to prove that he had all of his patients sign a proprietary VMS survey." The court further held that, since Plaintiff could not succeed on his breach of contract claim against VMS, Mr. Gant was entitled to summary judgment on the piercing the veil claim.[3]

The court also granted Plaintiff's motion and dismissed the Defendants' counter-complaint on the basis that the Purchase Agreement and the Guarantee were separate contracts and, because the Guarantee did not include a provision for attorney's fees and litigation costs, the Defendants were not entitled to recover same.

Both parties appeal. Plaintiff contends that summary judgment for Defendants was not appropriate because he presented sufficient evidence that he substantially performed the conditions precedent to entitle him to a refund under the terms of the Guarantee. Defendants contend that the trial court erred in holding that the Purchase Agreement and the Guarantee were separate agreements, in granting Plaintiff's motion for summary judgment, and in denying their request for attorney's fees.

## II. Standard of Review[4]

Summary judgment is appropriate if no genuine issues of material fact exist, and the movant meets its burden of proving that it is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.03; *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008). "The moving party may make the required showing and therefore shift the burden of production to the nonmoving party by either: (1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential

---

[3] At the hearing, Plaintiff withdrew the allegations that Defendants committed fraud and fraudulently induced him to enter the Purchase Agreement.

[4] In its order granting summary judgment to Defendants, the trial court stated it was granting the motion pursuant to Tenn. Code Ann. §20-16-101. This statute was added to Title 20 in § 1 of ch. 498, Public Acts 2011, and became effective July 1, 2011 and applicable to actions filed after that date. We have, accordingly, considered this case under the standards existing prior to the enactment of Tenn. Code Ann. §20-16-101.

element of the claim at trial." *Id.* To meet this burden, the moving party must "either produce evidence or refer to evidence previously submitted by the nonmoving party that negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential element of the claim at trial." *Id.*

"If the moving party makes a properly supported motion, then the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist." *Martin*, 271 S.W.3d at 84. The nonmoving party can meet its burden by:

> (1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.0[7].

*Id.* (citing *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)). "The nonmoving party's evidence must be accepted as true, and any doubts concerning the existence of a genuine issue of material fact shall be resolved in favor of the nonmoving party." *Id.*

On appeal, we must take the strongest view of the evidence in favor of the nonmoving party, allowing all reasonable inferences in its favor and discarding all countervailing evidence. *See Shadrick v. Coker*, 963 S.W.2d 726, 731 (Tenn. 1998) (citing *Byrd v. Hall*, 847 S.W.2d 208, 210–11 (Tenn. 1993)). Since our review concerns questions of law, we review the record *de novo* with no presumption of correctness. *See* Tenn. R. App. P. 13(d); *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997).

### III. Analysis

**A. Defendants' Motion for Summary Judgment**

In order to receive a refund pursuant to the terms of the Guarantee, Plaintiff had to prove that he met each of several conditions. In their motion for summary judgment, Defendants contended that Plaintiff failed to collect signed proprietary VMS Allergy Relief Survey forms from each of his patients, and thus, failed to satisfy one of the conditions precedent under the contract.

Where parties have entered a conditional contract, "[n]o liability under the contract attaches to either party until [the] condition precedent is fulfilled." *Covington v. Robinson*, 723 S.W.2d 643, 645 (Tenn. Ct. App. 1986) (citing *Strickland v. City of Lawrenceburg*, 611 S.W.2d 832 (Tenn. Ct. App.1981)). The burden of proof is generally on the party seeking

to enforce a contract to prove the satisfaction of conditions precedent to the defendant's obligations. *Khalil v. CarCar Dev., Inc.*, M2006-02422-COA-R3-CV, 2007 WL 4530829, at *4 (Tenn. Ct. App. Dec. 21, 2007) (citing *McReynolds v. Am. Progressive Corp.*, No. 01-A-019008CH00300, 1991 WL 24891 (Tenn.Ct.App. March 1, 1991); *Abni Joint Venture v. Kinnaird,* No. 86-292-II, 1987 WL 7968 (Tenn.Ct.App. March 19, 1987)).

In their Tenn. R. Civ. P. 56.03 statement of material facts, Defendants asserted the following as facts, which plaintiff admitted:

> 36.  Plaintiff did not begin having patients complete the proprietary VMS Allergy Relief Survey forms referred to in the Conditional Guarantee until "about three months in the contract."
> Response: Admitted

> 37.  Plaintiff cannot produce even one VMS Allergy Relief Survey, much less one signed by a patient.
> Response: Admitted

This was sufficient to show that Plaintiff could not prove an essential element of his claim, i.e., that he had satisfied the condition precedent in the Guarantee; the burden thereby shifted to the Plaintiff to point to evidence establishing material factual disputes, to produce additional evidence establishing the existence of a genuine issue for trial, or to submit an affidavit explaining the necessity for further discovery. *Martin*, 271 S.W.3d at 84.

In response, Plaintiff filed his affidavit in which he admitted that he did not have all patients fill out the survey. While Plaintiff does not contend that collecting the surveys was not a condition precedent to recovery under the Guarantee or that a genuine issue of material fact exists as to whether or not he satisfied the condition precedent, in reliance on *Big Fork Mining Co., Inc. v. Ky. Cent. Ins. Co.*, 888 S.W.2d 434, 437 (Tenn. Ct. App. 1994), he argues that meeting the purpose of the contract rather than its express provisions permits him to recover on the Guarantee. Plaintiff asserts that the surveying requirement was included in the Guarantee for a marketing purpose and that he met that purpose by adding the BAX3000 to his marketing materials and by collecting information similar to that contained in the VMS surveys from his patients who suffered from allergy problems or who expressed an interest in allergy relief; consequently, he "substantially performed [the] surveying requirement of the Guarantee, thus entitling him to the refund."[5]

---

[5] In his affidavit, Plaintiff stated:

> 5.  I was not comfortable having all of my patients fill out and sign a survey for Virtual Medical Solutions. My patients suffer from myriad problems, but most of them did

(continued...)

In *Big Fork*, a mining company sued an insurance company which had posted a reclamation bond to recover on a promise to pay the mining company $50,000 when the mining company secured a bond which would replace the insurance company's bond. The mining company was unable to secure the replacement bond but performed the necessary reclamation at its own expense; as a result the insurance company was released from its obligation. This court affirmed the trial court's judgment for the mining company, holding:

> . . . the defendant has received all of the benefits of the performance of the condition precedent, at heavy expense to the plaintiff. Every consideration of justice and equity demands that defendant pay the agreed price of the benefit without expense to itself by utilizing the fund which it holds from [another mining company] for the purpose.

888 S.W.2d at 437.

We do not find the holding in *Big Fork* dispositive of the issues in this case. The court in *Big Fork*, acting in equity, found that the insurance company received "all the benefits of performance of the condition precedent"; the court reasoned that insisting that the condition precedent be performed would result in the insurance company "realiz[ing] a windfall of $50,000." *Id.* In contrast, the facts in this case show that VMS did not receive the benefits of the performance of the condition that Plaintiff survey all of his patients.

Mr. Gant testified in his deposition as follows:

Q:   Did you reference any other requirements for a refund during that conversation?

A:   My recollection is we talked about marketing. I asked what was he doing and how was he doing it. He said he wasn't really doing very much. I said, "Well, are you surveying all your patients?"
He said, "no, not really."
I said, you . . . that you need to. And I said, "Why aren't you?"

---

[5](...continued)
      not suffer from allergy problems and did not seek my medical care for allergy relief.

6.    For each of my patients that did suffer from allergy problems or expressed an interest in allergy relief, I collected health and marketing information that was similar to the information requested on the VMS surveys.

7.    I added the BAX3000 allergy relief system to my marketing materials that I make available to every patient in my office. I added this information to my marketing materials at my own expense.

And he says, "Well, I am uncomfortable with it. So I am not doing anything," et cetera, et cetera. So we discussed surveying his patients and the need to do that.

We discussed other potential things he could do to market, what about putting it on your Web site, you know, all those kinds of things. He just said that he wasn't really doing much because he was uncomfortable, and so that's my vague recollection. So we discussed, you know, that he should start surveying. He should get retrained. He should, you know, move forward in trying to make it successful.

It is apparent from the foregoing that surveying was a requirement for a refund and that the fact that Plaintiff was "uncomfortable" with surveying his patients did not excuse the requirement. Plaintiff has failed to show any benefit to defendants from his collection of the health and marketing information he collected from certain of his patients or the marketing materials referenced in his affidavit; he has failed to show that "[t]he accomplishment of the purpose and objective of the condition precedent constituted a substantial performance of the condition." *Big Fork*, 888 S.W.2d at 437 (citing 17A Am.Jur.2d. Contracts, § 618). The equitable considerations in *Big Fork* are not present under the record before us. Consequently, we proceed to determine whether Defendants are entitled to judgment as a matter of law. *Martin*, 271 S.W.3d at 84.

This Court has stated that "[t]he courts must interpret contracts as they are written and will not make a new contract for parties who have spoken for themselves." *Tennessee Div. of United Daughters of the Confederacy v. Vanderbilt Univ.*, 174 S.W.3d 98, 118 (Tenn. Ct. App. 2005) (citations omitted). Where parties, such as those in the present case, have committed themselves to contractual obligations through negotiation and agreement, we are not free to release the parties from those obligations. *See id.* Plaintiff signed the Guarantee which expressly required that he survey each patient in order to receive a refund; his assertion that he added the BAX3000 to his marketing materials and surveyed only patients who suffered from allergies is not sufficient to meet the condition precedent as agreed to by the parties.

Viewing the evidence and materials in the light most favorable to Plaintiff and affording all reasonable inferences, Plaintiff has failed to demonstrate that he substantially performed the condition precedent. Defendants are entitled to judgment as a matter of law and summary judgment to Defendants on the breach of contract claim was proper.

**B. Plaintiff's Motion for Partial Summary Judgment**

In granting Plaintiff's motion for partial summary judgment, the trial court held that, since the Guarantee which Plaintiff sued to enforce did not contain a fee-shifting provision, Defendants were not entitled to an award of attorneys fees for their successful defense of the

case. Defendants argue on appeal that the Purchase Agreement, which includes a fee-shifting provision,[6] should be construed with the Guarantee to authorize an award of fees to them.

"The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern; [t]he intent of the parties is presumed to be that specifically expressed in the body of the contract." *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002) (citation omitted). "If clear and unambiguous, the literal meaning of the language controls the outcome of contract disputes." *Id.* The terms of separate contracts forming integral parts of a single transaction may be considered together. *Hall v. Tenn. Workers Credit Union*, No. M2001-01346-COA-R3-CV, 2002 WL 31728875, at *7 (Tenn. Ct. App. 2002). In *McCall v. Towne Square, Inc.*, the Supreme Court set forth the general principles with respect to construing separate instruments as follows:

> 'Other writings, or matters contained therein, which are referred to in a written contract may be regarded as incorporated by reference as a part of the contract and therefore, may be properly considered in the construction of the contract. Where a written contract refers to another instrument and makes the terms and conditions of such other instrument a part of it, the two will be construed together as the agreement of the parties.'

*McCall v. Towne Square, Inc.*, 503 S.W.2d 180, 182–83 (Tenn. 1973).

The Purchase Agreement and Guarantee were executed by the parties during the same time frame and both concerned the same piece of medical equipment. Neither agreement, however, refers to the other or incorporates the other by reference. No language within either agreement indicates that the parties intended for the agreements to be construed together. To the contrary, the language of the Purchase Agreement states:

> 14.    ENTIRE AGREEMENT
> This instrument, together with the quotation and formal VMS order acknowledgment, constitutes the entire and only agreement between the parties hereto, and any representation, affirmation or fact, or course of prior dealing, promise or condition in connection therewith or usage of the trade not incorporated herein, shall not be binding on either party. No waiver, alteration

---

[6] The relevant provision of the Purchase Agreement reads:

> 13.    LITIGATION
> In the event suit is filed to construe or enforce this Agreement, the prevailing party in such suit shall be entitled to an award of all costs and expenses incurred in connection therewith, including, but not limited to attorney's fees and costs through trial and appeal.

or modification of these terms and conditions shall be valid unless made in writing and signed by the parties hereto.

We do not deem the Guarantee and the Purchase Agreement to be "integral parts of the same transaction," in the manner contemplated by case law and for the purpose advocated by Defendants.[7] While each instrument relates to the sale of the BAX3000 machine, the provisions of the Guarantee are not integral to the transaction memorialized in the Purchase Agreement and the provisions of the Purchase Agreement are not integral to the enforcement of the Guarantee; rather, each agreement stands alone and may be enforced independently of the other.[8] Inasmuch as the documents are separate contracts and the Guarantee contains

_____

[7] For example, in *Hall*, a Husband and Wife challenged the foreclosure of their home by Defendant, a credit union, for nonpayment of property taxes. *Hall*, 2002 WL 31728875. Husband and Wife contended that the deed of trust and note constituted the entire agreement of the parties and that although these documents required the payment of taxes, they did not contain an acceleration clause with respect to nonpayment. *Id.* at *4. In addition to the note and deed of trust at issue, the trial court considered other documents which the credit union contended were part of the parties' agreement. *Id.* at *4. This Court determined that the credit agreement, which contained an acceleration clause and stated that its terms applied to later agreements, established the "terms and conditions of the relationship between the parties and of any future transactions." *Id.* at *4–5. This Court further stated that the Loanliner Credit Application specifically incorporated the terms of the previously signed credit agreement and that the Truth in Lending Disclosure Statement referred specifically to the Deed of Trust and all other contract documents. *Id.* *6–8. This Court held that because this series of documents were "integral parts of the same transaction," they constituted the entire agreement of the parties. *Id.* at *8. Similarly, in *McCall*, an owner of property who had a contract with a developer to exchange land upon which the developer intended to build a shopping center for the construction of a commercial building on another piece of land sued a construction company, which had a separate contract with the developer to construct the owner's building, to perform the contract in accordance with the agreement between the construction company and the developer. The court noted, under the facts of that case:

> [I]t is necessary to consider all of the instruments in the sequence of execution to arrive at the intentions of all the parties, and this leads us to the conclusion that no one of the instruments can be considered independently, and all must be considered collectively. When this is done, it is apparent that there was in reality one total contract designed to insure the development of the shopping center and the construction of the commercial building for [owner].

*McCall*, 503 S.W.2d at 182.

[8] Defendants argue that the Guarantee and the Purchase Agreement cannot be separate contracts because Plaintiff "agreed not to make 'any claim' against . . . VMS" in paragraph 8 of the Purchase Agreement and that this waiver would have prevented Plaintiff from making a claim under the Guarantee. Paragraph 8 reads:

> 8.      WARRANTY AND WARRANTIES DISCLAIMER
> Purchaser acknowledges that VMS is not the manufacturer of the Equipment sold subject

(continued...)

no provision allowing for the collection of attorney's fees and litigation costs by the prevailing party, Plaintiff is entitled to judgment on this claim and we affirm the trial court's dismissal of Defendants' counter-complaint.

## IV. Conclusion

For the foregoing reasons, the judgment of the trial court granting summary judgment to Defendants with respect to liability under the Guarantee and granting partial summary judgment to Plaintiff on the matter of attorney's fees and litigation costs is affirmed.

_____

RICHARD H. DINKINS, JUDGE

---

[8](...continued)

> to this Purchase Agreement. . . . VMS MAKES NO WARRANTIES, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. Accordingly, it is agreed notwithstanding anything to the contrary, Purchaser will not make any claim against VMS for any damages, whether consequential, direct, special or indirect.

We fail to see the logic in Defendant's argument. Plaintiff's claim for breach of the Guarantee was not a claim for damages as contemplated by paragraph 8, which clearly refers to a claim for breach of warranty related to the BAX3000 machine, but, rather, was a claim to enforce a contractual duty arising under the Guarantee.