FILED
03/30/2017
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 21, 2017 Session

**ROBERT H. EDWARDS v. UROSITE PARTNERS**

**Appeal from the Chancery Court for Davidson County**
**No. 15-946-BC      Ellen Hobbs Lyle, Chancellor**

**No. M2016-01161-COA-R3-CV**

Plaintiff was a partner of a physician practice and a limited partner in a real estate investment limited partnership. Continuing employment with the physician practice was a condition of remaining a limited partner. Following the termination of Plaintiff's employment with the physician group, Plaintiff, the physician group, and the limited partnership entered into a Separation Agreement. The limited partnership agreed not to redeem Plaintiff's interest in the limited partnership if he did not expand his practice outside Giles and Hickman Counties. Plaintiff began practicing outside these counties, and the limited partnership redeemed Plaintiff's interest. Plaintiff objected and filed a complaint seeking declaratory relief. The trial court granted the limited partnership's motions to dismiss and for judgment on the pleadings. Plaintiff appealed, and we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Chancery Court Affirmed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and RICHARD H. DINKINS, J., joined.

Stephen C. Knight and Nader Baydoun, Brentwood, Tennessee, for the appellant, Robert H. Edwards.

James N. Bowen and Elizabeth O. Gonser, Nashville, Tennessee, for the appellee, Urosite Partners.

## OPINION

### I. Factual and Procedural Background

Robert H. Edwards, M.D., was a urologist and partner of Urology Associates, P.C. ("UA"). In 2000, Dr. Edwards and twenty-one other physicians/shareholders of UA formed Urosite, L.P. ("Urosite" or "the Partnership") for the purpose of purchasing, owning, managing, and operating the real and personal property located at UA's primary office location. When they formed Urosite, Dr. Edwards and the other limited partners entered into an Agreement of Limited Partnership (the "Agreement"). The Agreement provided that partnership in Urosite was conditioned on continuing employment with UA.

The redemption provisions of the Agreement provide that the Partnership has the right to purchase a limited partner's units in the Partnership "upon the termination of a Limited Partner's employment agreement with [UA] for any reason other than death, disability or retirement from the practice of medicine." Dr. Edwards worked pursuant to an employment agreement with UA from July 1, 2004, through June 30, 2011. After this date, Dr. Edwards continued working for UA as an employee at will until the end of December 2013.

On January 10, 2014, Dr. Edwards, Urosite, and UA entered into a Separation Agreement and Mutual Release ("Separation Agreement"). Paragraph 2 of the Separation Agreement provides that if Dr. Edwards practices outside Hickman or Giles Counties, the Partnership could exercise its right to redeem Dr. Edwards' interest in Urosite pursuant to the terms of the Agreement.

In the spring of 2014, the Veterans Administration asked Dr. Edwards to help it provide medical care to veterans in Rutherford and Davidson Counties. Dr. Edwards agreed and began providing medical services to veterans in those counties. On or about March 31, 2015, Urosite informed Dr. Edwards that it was exercising its right to redeem Dr. Edwards' limited partnership interest for a price equal to the value of his capital account, in accordance with the terms of the Agreement.

Dr. Edwards objected to Urosite's redemption of his interest in the Partnership, and he filed a complaint in August 2015 seeking declaratory relief and damages for breach of contract. Dr. Edwards sought the following declaratory relief:

> Dr. Edwards seeks a declaratory judgment that he remains a limited partner in Urosite, and that Urosite does not have a right to acquire his partnership interest. The legal bases for this claim include, but are not limited to: (1) under the circumstances, the Urosite Agreement does not provide Urosite the right to acquire Dr. Edwards' ownership interest; (2) Urosite did not

timely exercise any right it may have had under the Urosite Agreement; (3) Dr. Edwards' work for the Veterans' Administration was not a material breach of the Separation Agreement; and (4) the restrictions on Dr. Edwards' practice of medicine in the Separation Agreement are not enforceable and violate public policy.

In support of his breach of contract claim, Dr. Edwards alleged Urosite failed to meet its contractual obligations to him, "including its obligation to pay [him] his share of distributions from the partnership and its obligation to account to [him]."

## II. TRIAL COURT PROCEEDINGS

Urosite filed a motion to dismiss pursuant to Tenn. R. Civ. P. 12.02(6) in September 2015 and sought an award of its attorneys' fees as provided in paragraph thirteen of the Separation Agreement. The trial court filed a Memorandum and Order on February 2, 2016, dismissing the majority of Dr. Edwards' claims. The court wrote:

> [T]he Court concludes as a matter of law, based upon the plain, unambiguous wording of the Partnership Agreement, and the operation and incentives of the [Agreement], that the Defendant's exercise of its section 9.2(b) right to repurchase the Plaintiff's interest for the value of his Capital Account within 45 months of the termination of Plaintiff's employment was not untimely and, therefore, was not an invalid exercise of the right of redemption.
>
> . . . .
>
> The Court concludes that the disincentives at work in paragraph 2 of the SA are too remote and attenuated from the Plaintiff's practice of his profession to come within the prohibitions of *Spiegel*, *Murfreesboro*, or Tennessee Code Annotated section 63-1-148. Accordingly, the Court grants that part of Defendant's Motion to Dismiss asserting that paragraph 2 of the Separation Agreement does not violate Tennessee law or public policy.

Urosite filed an answer with regard to the remaining issues, which were (a) whether Dr. Edwards remained a limited partner of Urosite and (b) whether Dr. Edwards committed a material breach of the contract when he decided to work for the VA in Rutherford and Davidson Counties. Urosite then filed a motion for judgment on the pleadings in March, and the court filed a Memorandum and Order granting Urosite's motion on May 3, 2016. The court wrote:

1.     The Court adopts the Defendants' analysis that the "if and when Dr. Edwards expands his practice of urology beyond Hickman County, Tennessee and Giles County, Tennessee" of paragraph 2 of the SA is, under Tennessee law, a condition and not a promise/contract obligation of the Petitioner. In concluding this phrase is a condition, the Court relies upon the plain wording of the phrase and that "if and when" wording is typically used to express conditions . . . .

2.     In enforcing the consequences of fulfilled conditions, a court does not consider materiality unless there are extraordinary circumstances of unfairness or injustice which demand equitable relief. . . .

3.     The circumstances alleged by the Plaintiff in the complaint are not extraordinary so as to require a materiality analysis of the condition and to provide equitable relief.

4.     Paragraph 2 of the SA is unambiguous.  Its meaning is clear on its face and, therefore, the Court is not authorized to take into account allegations of the pleadings concerning motivation or design to construe the SA. . . .

The court filed a Final Memorandum and Order on July 6, 2016, denying Dr. Edwards' motion to revise and awarding Urosite its attorneys' fees in the requested amount of $103,792.50.

On appeal, Dr. Edwards contends the trial court erred in ruling that (1) Urosite exercised its option to redeem his interest in the limited partnership within a reasonable time; (2) his work for the Veterans Administration in Davidson and Rutherford Counties satisfied the condition set forth in the Settlement Agreement permitting Urosite to exercise its option; (3) the condition set forth in paragraph 2 of the Settlement Agreement was not void as an unlawful restriction on competition; and (4) Urosite, rather than he, was entitled to recover attorneys' fees.  Urosite requests an award of its attorneys' fees and costs incurred on appeal.

III. ANALYSIS

A.  Standard of Review

A motion to dismiss filed pursuant to Tenn. R. Civ. P. 12.02(6) challenges "the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). The defendant admits the truth of the relevant and material allegations set forth in the complaint for purposes of the motion and contends that the allegations fail to establish a

viable cause of action entitling the plaintiff to relief. *Id.* (citing *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850, 854 (Tenn. 2010)).

Courts resolve motions to dismiss for failure to state a claim by considering the pleadings alone. *Id.* (citing *Leggett v. Duke Energy Corp.*, 308 S.W.3d 843, 851 (Tenn. 2010)). In considering the motion, a court is to "'construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" *Id.* (quoting *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31 (Tenn. 2007)). Courts should not grant a motion to dismiss unless the plaintiff is unable to prove any set of facts that would entitle him or her to relief on the claims asserted. *Id.* (citing *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002)). On appeal, we review a trial court's ruling on a motion to dismiss de novo, affording the trial court's determination no presumption of correctness. TENN. R. CIV. P. 13(d); *Webb*, 346 S.W.3d at 426.

A motion for judgment on the pleadings is filed pursuant to Tenn. R. Civ. P. 12.03 and is similar to a motion to dismiss for failure to state a claim except that it is made after an answer is filed rather than before. TENN. R. CIV. P. 12.03; *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003). As with a motion to dismiss, the courts "accept as true 'all well-pleaded facts and all reasonable inferences drawn therefrom'" that a plaintiff asserts in his or her complaint. *Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d 466, 470 (Tenn. 2004) (quoting *McClenahan v. Cooley*, 806 S.W.2d 767, 769 (Tenn. 1991)). Courts interpret the complaint liberally in favor of the plaintiff and accept all factual allegations asserted in the complaint as true. *Young*, 130 S.W.3d at 63. The Court of Appeals reviews a trial court's grant of a motion for judgment on the pleadings de novo and will affirm the trial court's decision only if it determines that the plaintiff is unable to prove any set of facts in support of any of his or her cause(s) of action that would entitle him or her to relief. TENN. R. APP. P. 13(d); *Young*, 130 S.W.3d at 63.

This case involves the interpretation of the parties' contracts.[1] Contract interpretation is a matter of law, which means we conduct a de novo review with no presumption of correctness awarded to the trial court's interpretation. TENN. R. APP. P. 13(d); *West v. Shelby Cnty. Healthcare Corp.*, 459 S.W.3d 33, 42 (Tenn. 2014); *Allmand v. Pavletic*, 292 S.W.3d 618, 624-25 (Tenn. 2009); *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006).

---

[1] Urosite attached a copy of the Agreement and the Separation Agreement to its complaint, rendering them a part of the pleadings and appropriate for consideration by a court ruling on a motion to dismiss or judgment on the pleadings. *See McGhee v. Shelby Cnty., Gov't*, W2012-00185-COA-R3-CV, 2012 WL 2087188, at *1 n.2 (Tenn. Ct. App. June 11, 2012); *Brewer v. Piggee*, W2006-01788-COA-R3-CV, 2007 WL 1946632, at *6 (Tenn. Ct. App. July 3, 2007).

B.  Timeliness of Exercise

Dr. Edwards first argues that Urosite did not exercise its option to repurchase his limited partnership interest in a timely manner.  The documents concerning Urosite's redemption of Dr. Edwards' interest in the Partnership include the Agreement, and the Separation Agreement.  Article 9 of the Agreement has the heading "Transfer of Partnership Interests," and section 9.2 is titled "Call Rights of the Partnership." Section 9.2(a) addresses the situation when a limited partner dies, is declared incompetent, declares bankruptcy, becomes insolvent, or ceases to exist.  Section 9.2(b) addresses the situation when a limited partner's employment agreement with UA terminates, as here.  It provides as follows:

> Upon the termination of a Limited Partner's employment agreement with the General Partner for any reason other than death, disability or retirement from the practice of medicine, the Partnership shall have the right to purchase all of such Limited Partner's Units for a price equal to the value of such Limited Partner's Capital Account. The value of such Limited Partner's Capital Account shall be paid to the Limited Partner, his estate, heirs or other designees over a three year term with interest at the prime rate as quoted by The Wall Street Journal as of the closing date of the Partnership's purchase of the Units.

The Separation Agreement begins with "whereas" clauses stating, *inter alia*, (1) that Dr. Edwards' employment agreement expired by its terms on June 30, 2011; (2) that Dr. Edwards' employment with UA terminated on December 31, 2013; and (3) that Dr. Edwards intended to continue practicing urology in Hickman County and Giles County, Tennessee.  Section 1 has the heading "Redemption of Dr. Edwards's Interests," and subsection 1(f) states:

> As discussed further in Section 2 below, the Partnership agrees based on certain representations by Dr. Edwards that it will not exercise any right to demand that Dr. Edwards redeem his interest in Urosite, L.P. consistent with the terms of Section 2 below.

Section 2 provides as follows:

> Urosite, L.P.  Consistent with Section 1f above, the Partnership agrees that it will not exercise any right to demand that Dr. Edwards redeem his interest in Urosite, L.P. as of, or after, the date of his departure from the Practice in consideration for and based on Dr. Edwards's representation that his ongoing practice in the field of urology will be limited to Hickman County, Tennessee and Giles County, Tennessee.  The Partnership reserves any right to call Dr. Edwards's interest in Urosite, L.P. pursuant to the

- 6 -

Agreement of Limited Partnership if and when Dr. Edwards expands his practice of urology beyond Hickman County, Tennessee and Giles County, Tennessee.

"A cardinal rule of contractual interpretation is to ascertain and give effect to the intent of the parties." *Allmand*, 292 S.W.3d at 630; *see also West*, 459 S.W.3d at 41-42; *Allstate Ins. Co.*, 195 S.W.3d at 611. The parties' intent is determined by considering the "plain meaning of the words" used in the contract. *Allmand*, 292 S.W.3d at 630; *Allstate Ins. Co.*, 195 S.W.3d at 611. If the words used are clear, unambiguous, and not susceptible to more than one reasonable interpretation, courts are to rely on the literal language used in the contract to determine the parties' intent. *Allmand*, 292 S.W.3d at 630; *Allstate Ins. Co.*, 195 S.W.3d at 611; *see also Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 889-90 (Tenn. 2002) (explaining parties' intent is based on usual, natural, and ordinary meaning of words used in contract). A court will not look beyond the four corners of the document to determine the parties' intent when the contract is unambiguous. *Williams v. Larry Stovesand Lincoln Mercury, Inc.*, No. M2014-00004-COA-R3-CV, 2014 WL 5308634, at \*4 (Tenn. Ct. App. Oct. 15, 2014); *West*, 459 S.W.3d at 42. A contract is not ambiguous if its meaning is clear and it is not subject to more than one interpretation. *Allstate Ins. Co.*, 195 S.W.3d at 611.

Section 9.2(b) of the Agreement specifies when the Partnership first acquires the right to purchase Dr. Edwards' Units (upon the termination of his employment agreement with UA), but it neither specifies an end date for this right nor indicates that this right expires if not exercised within a particular period. It is noteworthy that the Agreement does not provide a limited partner whose employment agreement has terminated the right to require Urosite to purchase his interest in the Partnership. However, section 9.3 of the Agreement gives such right to those (or their heirs/representatives) who are no longer limited partners due to retirement, death, incompetence, bankruptcy, or insolvency. Section 9.3 is titled "Put Rights of the Limited Partners," and it provides:

> Upon the retirement, death, adjudication of incompetence, dissolution or cessation of existence of a Limited Partner, such Limited Partner or his legal representative shall have the right to require the Partnership to Purchase all of such Limited Partner's Units for the Purchase Price, as such term is defined in Section 9.2. . . .

When a contract contains different sections, a court is not to read the sections in isolation; it is to read the sections together to determine the meaning of the document as a whole. *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 705 (Tenn. 2008); *S. Trust Ins. Co. v. Phillips*, 474 S.W.3d 660, 668 (Tenn. Ct. App. 2015). "'All provisions of a contract should be construed as in harmony with each other, if such construction can be reasonably made, so as to avoid repugnancy between the several provisions of a single contract.'" *Wager v. Life Care Ctrs. of Am., Inc.*, No. E2006-01054-COA-R3-CV, 2007

- 7 -

WL 4224723, at *10 (Tenn. Ct. App. Nov. 30, 2007) (quoting *Rainey v. Stansell*, 836 S.W.2d 117, 119 (Tenn. Ct. App. 1992)). Moreover, "[w]here an executed agreement refers to the other documents, all of the documents must be construed together as the contract of the parties." *Williams*, 2014 WL 5308634, at *5; *see also Real Estate Mgmt. v. Giles*, 293 S.W.2d 596, 599 (Tenn. Ct. App. 1956) (stating where several documents are executed as part of the same agreement, the court reads them together and interprets them with reference to one other).

Both the Agreement and the Separation Agreement reference the Partnership's right to purchase Dr. Edwards' interest in the Partnership. Dr. Edwards does not deny that Urosite's right to purchase his interest in the Partnership first ripened when his employment agreement with UA terminated on June 30, 2011. When he and Urosite entered into the Separation Agreement two and a half years later, in January 2014, the language of the Separation Agreement reveals that both Dr. Edwards and Urosite believed the Partnership's option to purchase Dr. Edwards' interest in Urosite was still viable. Subsection 1(f) and section 2 clearly and unambiguously identify the circumstances under which Urosite could exercise its option. As section 2 states, "The Partnership reserves any right to call Dr. Edwards's interest in Urosite, L.P. pursuant to the Agreement of Limited Partnership if and when Dr. Edwards expands his practice of urology beyond Hickman County, Tennessee and Giles County, Tennessee." The parties' intent is clear that Urosite was to have the right to exercise its option to purchase Dr. Edwards' interest in the Partnership if and when Dr. Edwards practiced urology outside of Hickman or Giles Counties.

In his complaint, Dr. Edwards asserts that the Veterans Administration asked him in the spring of 2014 to provide urology services in Rutherford and Davidson Counties and that he began to provide these services as requested. Dr. Edwards further asserts that the Partnership exercised its option to redeem his shares in Urosite the following March 2015. The Separation Agreement does not limit the time within which Urosite must act to purchase Dr. Edwards' shares once he begins practicing urology outside Hickman or Giles Counties. However, the inclusion of paragraph 9.3 in the Agreement, giving a limited partner the right to require the Partnership to purchase his shares in certain circumstances (¶9.2(a) of the Agreement), without a corresponding provision for limited partners whose employment agreements with UA terminate (¶9.2(b) of the Agreement), evidences the parties' intent that Urosite was to have the sole discretion about when, or if, it redeemed the interest held by a limited partner whose employment agreement with UA terminated. Likewise, in the absence of a provision in the Separation Agreement limiting the period within which Urosite must act to redeem Dr. Edwards' shares in the event he practices urology outside Hickman or Giles Counties, we conclude there is no firm period within which Urosite was required to redeem Dr. Edwards' shares following the expansion of his practice outside these counties.

Dr. Edwards relies primarily on cases involving real estate to support his argument that Urosite's exercise of its right to purchase his interest in the Partnership forty-five months after his employment agreement terminated was too long and not reasonable under the circumstances. In *Norton v. McCaskill*, 12 S.W.3d 789 (Tenn. 2000), for example, the lease agreement provided that the lessee could renew its lease "at the end of 10 years" but did not specify a time period within which the lessee was required to exercise the option. *Norton*, 12 S.W.3d at 792. The Supreme Court in *Norton* stated that when a lease does not include a specific time designation, an option to renew "remains effective only during the term of the lease." *Id.* at 793-94. The Court found that exercising the option ten days after the lease expired was too late. *Id.* at 794. However, the *Norton* Court expressly limited its holding to "those leases that require renewal 'at the end of' or 'at the termination of' the lease or that contain similar language conveying the same requirement." *Id.* Because the facts here do not involve a lease and because the Agreement does not contain language similar to that in the *Norton* case, the holding in *Norton* does not control here.

By arguing that Urosite did not act in a timely fashion to redeem his interest in the Partnership, Dr. Edwards essentially asks us to insert a term into the agreements where no term currently exists to limit the period within which Urosite was required to exercise its option. Tennessee courts, however, "must interpret contracts as they are written," *Tenn. Div. of United Daughters of the Confederacy v. Vanderbilt Univ.*, 174 S.W.3d 98, 118 (Tenn. Ct. App. 2005), and they "are 'not at liberty to make a new contract for parties who have spoken for themselves,'" *Ellis v. Pauline S. Sprouse Residuary Trust*, 280 S.W.3d 806, 814 (Tenn. 2009) (quoting *Smithart v. John Hancock Mut. Life Ins. Co.*, 71 S.W.2d 1059, 1063 (Tenn. 1934)). Courts do not consider whether a party was wise or foolish to enter into a particular contract, and they will not rewrite a party's contract just because it later becomes "burdensome or unwise." *Vanderbilt Univ.*, 174 S.W.3d at 118; *see also Ellis*, 280 S.W.3d at 814.

A consideration of the two agreements in their totality along with the parties' relationship with one another leads us to conclude that the parties did not intend to place an outside limit on the period within which Urosite could redeem Dr. Edwards' shares in Urosite. We conclude Urosite acted in a timely fashion when it made the decision to redeem Dr. Edwards' shares in the Partnership in March 2015. *See Int'l Flight Ctr. v. City of Murfreesboro*, 45 S.W.3d 565, 570 (Tenn. Ct. App. 2000) (explaining that court may consider parties' situation, business to which contracts relate, and circumstances surrounding transaction in ascertaining parties' intent). Urosite exercised its option approximately one year following the time Dr. Edwards began practicing outside Giles and Hickman Counties, a time period which, we conclude, was reasonable under the circumstances.

C. Condition Triggering Redemption

Dr. Edwards next argues that he substantially complied with the practice restriction contained in the Separation Agreement and that the trial court erred in finding that he satisfied the condition triggering Urosite's option to redeem his interest in the Partnership. According to Dr. Edwards, the work he did for the Veterans Administration in Davidson and Rutherford Counties was not "material" to Urosite because the Veterans Administration did not compete with UA for urology patients.

We find Dr. Edwards' argument unavailing. As we discussed earlier, "courts must interpret contracts as they are written, and will not make a new contract for parties who have spoken for themselves." *Vanderbilt Univ.*, 174 S.W.3d at 118 (internal citations omitted). The Separation Agreement does not qualify the type of practice Dr. Edwards must engage in or for/with whom he must work to satisfy the condition of expanding his urology practice outside of Giles and Hickman Counties. Rather, the Separation Agreement simply provides that the Partnership "reserves any right" to call Dr. Edwards' interest in Urosite "if and when Dr. Edwards expands his practice of urology beyond Hickman County, Tennessee and Giles County, Tennessee." Contrary to Dr. Edwards' suggestion otherwise, there is no requirement that Dr. Edwards work in competition with UA to satisfy the condition of the agreement.

The case of *Saeedpour v. Virtual Medical Solutions, LLC*, No. M2012-00994-COA-R3-CV, 2013 WL 1400616 (Tenn. Ct. App. Apr. 5, 2013), is instructive. The plaintiff in that case was a physician who purchased an allergy relief system from the defendant. *Saeedpour*, 2013 WL 1400616, at *1. The parties entered into a conditional money back guarantee whereby the defendant agreed to refund a portion of the purchase price to the plaintiff if the plaintiff satisfied certain conditions, one of which was conducting a particular survey of all of his patients. *Id.* The plaintiff admitted that he did not ask all of his patients to fill out the particular survey the defendant provided him. *Id.* at *4. However, the plaintiff claimed he substantially performed the survey requirement by collecting information similar to the information the defendant sought in its survey. *Id.* The Court of Appeals disagreed with the plaintiff's argument, stating: "Where parties . . . have committed themselves to contractual obligations through negotiation and agreement, we are not free to release the parties from those obligations." *Id.* at *5. The Court rejected the plaintiff's assertion that the survey he conducted, which was similar to the one the defendant provided him, was sufficient to satisfy the condition precedent because it was not the agreement the parties made. *Id.* Because the plaintiff failed to satisfy a condition of his contract with the defendant, the Court of Appeals granted the defendant's motion for summary judgment on the plaintiff's breach of contract claim. *Id.*

The Court of Appeals reached a similar conclusion in *Tennessee Division of United Daughters of the Confederacy v. Vanderbilt University*. In that case, the plaintiffs donated $50,000 in 1933 to a predecessor of Vanderbilt University to be used for the

construction of a women's dormitory, and the gift was conditioned on the university's placing on the building an inscription naming it "Confederate Memorial." *Vanderbilt Univ.*, 174 S.W.3d at 104-05. Approximately fifty years after the dormitory was built, some of the university's students, faculty, and staff objected to the use of the word "Confederate" as part of the dormitory's inscription. *Id.* at 106-07. In response to the objections, the university decided to remove the word "Confederate" from the pediment, to rename the building "Memorial Hall," and to place a plaque by the entrance to the building explaining the contributions of the donors and the reasons behind the name that was initially inscribed on the building. *Id.* at 117.

The donors filed a complaint seeking to enjoin the university from removing the word "Confederate" from the building, alleging this would be a breach of the condition underlying the monetary gift when it was made and accepted. *Id.* Vanderbilt asserted that its placement of the plaque by the entrance to the building constituted substantial performance of the condition. *Id.* The Court of Appeals rejected Vanderbilt's argument, reiterating the long-standing rules of law that contracts must be interpreted "as they are written," and that courts "are not at liberty to relieve parties from contractual obligations simply because these obligations later prove to be burdensome or unwise."[2] *Id.* at 118 (citations omitted).

Dr. Edwards' reliance on *Big Fork Mining Company, Inc. v. Kentucky Central Insurance Company*, 888 S.W.2d 434 (Tenn. Ct. App. 1994), is misplaced. The plaintiff in that case was seeking to collect $50,000 that was paid to the defendant insurance company to guarantee the insurance company against loss in exchange for the insurance company's agreement to sign the plaintiff's reclamation bond. *Big Fork Mining Co.*, 888 S.W.2d at 435. The parties' contract anticipated that the plaintiff would obtain a larger bond to replace the bond signed by the insurance company and that the insurance company would return the $50,000 at that time, but this was not feasible as a result of unforeseen circumstances. *Id.* The plaintiff ended up performing reclamation work that satisfied the plaintiff and the insurance company's obligations on the reclamation bond that the insurance company signed, thus extinguishing the insurance company's liability on the bond. *Id.* When the plaintiff sought to collect the $50,000 from the insurance company, the insurance company refused, asserting that the plaintiff had failed to satisfy the condition precedent, which was obtaining a substitute bond to replace and release its obligations under the bond it signed. *Id.* at 436.

The *Big Fork Mining* plaintiff filed a complaint against the insurance company, arguing that the underlying purpose of the condition was to release the defendant insurance company from liability under the bond and that this was accomplished when the plaintiff performed the reclamation work. *Id.* The trial court found that the plaintiff

---

[2] The *Vanderbilt University* Court concluded that if the university insisted on removing the "Confederate" name from the dormitory's pediment, the university would be required to return the $50,000 gift in the amount of its present value. *Vanderbilt Univ.*, 174 S.W.3d at 120.

was entitled to the $50,000, and the Court of Appeals agreed, noting that the insurance company would receive a windfall of $50,000 if it were not required to pay it over to the plaintiff. *Id.* The Court of Appeals explained that a third party to the agreement was responsible for the reclamation, but this third party became bankrupt, which led the plaintiff to perform the reclamation work that was necessary in the circumstances. *Id.* If the third party had reclaimed the land, the insurance company would have been obligated under the contract to refund the $50,000 to the third party, and the plaintiff would not have had to perform the reclamation work. *Id.* Under these circumstances, the Court of Appeals held that the plaintiff, who performed the third party's job, should be equitably subrogated to the third party's right to collect the $50,000. *Id.* The Court explained that the insurance company had "received all of the benefits of the performance of the condition precedent, at heavy expense to the plaintiff" and that "justice and equity" demanded that the insurance company pay the $50,000 to the plaintiff under the circumstances of that case. *Id.* at 437.

The facts here do not include the extraordinary equitable considerations that were at issue in the *Big Fork Mining* case. Dr. Edwards agreed that the repurchase price of a limited partner's interest in the Partnership would be the value of the limited partner's capital account if the circumstances set forth in section 9.2(b) of the Agreement came to pass. Dr. Edwards and the Partnership expressly referenced the Agreement when they executed the Separation Agreement over thirteen years later, in 2014. The parties had the opportunity to change the terms of the buyout of Dr. Edwards' interest at that time, but they did not do this. There is no "windfall" to Urosite if the terms of the contracts are carried out as the parties agreed.

Interpreting the Agreement and the Separation Agreement as written, we hold that Dr. Edwards satisfied the condition precedent when he began practicing urology in Rutherford and Davidson Counties in the spring of 2014, thereby triggering Urosite's right to repurchase Dr. Edwards' interest in the Partnership according to the terms set forth in the Agreement.

D. Restraint on Competition

Dr. Edwards' final argument is that enforcing paragraph 2 of the Separation Agreement violates Tennessee public policy by restricting his ability to practice medicine because paragraph 2 creates a financial disincentive to practice. In support of his argument, Dr. Edwards relies on *Spiegel v. Thomas, Mann & Smith, P.C.*, 811 S.W.2d 528 (Tenn. 1991). That case involved an employment and deferred compensation agreement among lawyers who were shareholders of an incorporated law firm. *Spiegel*, 811 S.W.2d at 528. The agreement provided that an employee who withdrew from the firm but continued to practice law was not entitled to deferred compensation. *Id.* at 529. The plaintiff left the firm and went to work elsewhere as in-house counsel. *Id.* When the firm denied his request for payment of his deferred compensation, the plaintiff sued the

firm, arguing that the agreement constituted an unenforceable non-competition agreement. *Id.* The Supreme Court agreed with the plaintiff's argument and concluded that the agreement violated a provision of Tennessee's Code of Professional Responsibility that prohibited agreements restricting an attorney's right to practice law. *Id.* at 530-31. Because the agreement violated the Code of Professional Responsibility, the Court found the agreement violated the public policy of Tennessee. *Id.* at 531.

Although Dr. Edwards does not mention *Murfreesboro Medical Clinic, P.A. v. Udom*, 166 S.W.3d 674 (Tenn. 2005), that case is more analogous to the facts here because it involved a non-competition agreement applicable to physicians. *Udom*, 166 S.W.3d at 676-77. In that case, Dr. Udom's employment agreement provided that upon termination of his employment with the clinic, Dr. Udom would not practice medicine within a twenty-five mile radius of the public square in Murfreesboro for a period of eighteen months. *Id.* at 676. The Supreme Court held that the non-competition provision of Dr. Udom's employment agreement was unenforceable because it violated Tennessee's public interest of allowing patients to exercise their fundamental right of selecting the physician they believe is best able to treat them. *Id.* at 683.

Unlike the situation in *Spiegel* and *Udom*, Urosite is a real estate investment limited partnership, not an employer. The Supreme Court in *Udom* expressed concern about decreasing the public's access to healthcare, decreasing competition for patients, and interfering with patients' relationships with their physicians. *Udom*, 166 S.W.3d at 679-82; *see* Tenn. Code Ann. § 63-1-148 (imposing restrictions on agreements limiting healthcare provider's practice when one party is "the employing or contracting entity"). The Separation Agreement does not limit Dr. Edwards' ability to work as the agreement in *Udom* limited Dr. Udom. It simply provides Urosite the opportunity to redeem Dr. Edwards' interest in the Partnership if he elects to practice outside Giles or Hickman Counties.

Moreover, unlike the case in *Udom*, Dr. Edwards provided no services to Urosite in exchange for compensation. Unlike the case in *Spiegel*, Dr. Edwards is not being denied any compensation that he may have earned as a result of his partnership in UA. Instead, he is simply precluded from continuing to be an investor in a real estate partnership. It is unclear how much money, if any, Dr. Edwards would receive if he continued as a limited partner in Urosite because a real estate venture is, by its nature, speculative. We find unpersuasive Dr. Edwards' argument that paragraph 2 of the Separation Agreement constitutes a violation of public policy.

Dr. Edwards acknowledges that the Separation Agreement entitles the prevailing party to an award of reasonable attorneys' fees and costs incurred. Dr. Edwards' argument that he is entitled to attorneys' fees is pretermitted by our affirmance of the trial court's judgments dismissing his claims. We remand this case to the trial court for a

determination of Urosite's reasonable attorneys' fees and costs incurred on appeal, and the trial court shall issue an order awarding that amount to Urosite.

## IV. CONCLUSION

For the reasons stated above, we affirm the trial court's judgments in all respects and remand the case for a determination of the reasonable attorneys' fees and costs Urosite incurred on appeal. Costs of this appeal shall be taxed against the appellant, Robert H. Edwards, M.D., for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE